[Civ. No. 32261. First Dist., Div. One. Jan. 28, 1974.]

JACK R. HUBBS et al., Plaintiffs, Cross-defendants and Respondents, v. THE PEOPLE EX REL. DEPARTMENT OF PUBLIC WORKS, Defendant, Cross-complainant and Appellant.

## COUNSEL

Harry S. Fenton, John P. Horgan, James M. Whitaker, William R. Edgar and David W. Robison for Defendant, Cross-complainant and Appellant.

Garry, Dreyfus, McTernan & Brotsky and David E. Pesonen for Plaintiffs, Cross-defendants and Respondents.

## OPINION

**MOLINARI, P. J.**—This is an appeal by defendant and cross-complainant (hereinafter "defendant") from a judgment in favor of plantiffs and cross-defendants (hereinafter "plaintiffs") in a declaratory relief action determining the rights of plaintiffs who are lessees of certain real property which had been acquired by defendant for future highway use.[1]

The real property leased by plaintiffs is occupied by single family residences which were leased to the individual plaintiffs under "rental agreements" executed between the individual lessees and defendant on various dates between 1961 and 1969. The present controversy arose on October 31, 1969, when defendant informed plaintiffs that their rent would be increased in accordance with existing rental agreements. Plaintiffs objected on the ground that the increases were excessive as the leased premises were allegedly in a state of disrepair. The parties agreed upon a temporary solution whereby defendant reduced the amount of rent increase, and plaintiffs deposited the amount of the interim increase in a trust fund pending resolution of the dispute between them. At that time plaintiffs raised for the first time the issue of defendant's failure to comply with the provisions of the Administrative Procedure Act (hereinafter the "Act"). (Gov. Code, § 11370 et seq.)

Negotiations proved ineffective and on October 30, 1970, defendant notified plaintiffs that their possession would be terminated unless they paid the funds held in trust and entered into a new lease with defendant.

The issue presented is whether the provisions of the Act apply when defendant holds title to real property acquired by it for future use pursuant to the authority vested in it by Streets and Highways Code section 104.6.[2] It is undisputed that defendant did not adopt formal regulations for the administration of the properties so acquired by it.

---

[1]At all times pertinent defendant acted by and through the Division of Highways, a division of defendant's Department of Public Works (former Gov. Code, § 14005). Effective July 1, 1973, Government Code section 14005 was repealed and under section 14001 of the Government Code the Department of Public Works was abolished and replaced by the Department of Transportation in the Business and Transportation Agency.

[2]Streets and Highways Code section 104.6, in pertinent part, provides: "The authority conferred by this code to acquire real property for state highway purposes includes authority to acquire for future needs. Structures maintained or allowed to remain on property which has been acquired or is acquired in the future for future highway needs shall be maintained in conformance with standards established in the building and safety ordinances of the city or county having jurisdiction. The standards to which such structure shall be made to conform are those standards, except for such variances

The stated purpose of the Act is to establish basic minimum procedural requirements for the adoption, amendment or repeal of administrative regulations. ". . . Except as provided in Section 11421,[3] *the provisions* of this article [the Act] *are applicable to the exercise of any quasi-legislative power* conferred by any statute . . . ." (Gov. Code, § 11420; italics added.) The lower court found that Government Code section 11420 applied to defendant in the exercise of its powers under Streets and Highways Code section 104.6, and also found that defendant had failed to promulgate regulations in accordance with the Act.

The pertinent inquiry is whether Streets and Highways Code section 104.6, giving defendant the authority to lease premises remaining on land acquired for future use, confers quasi-legislative power upon defendant. If this statute confers quasi-legislative power, defendant is required to promulgate regulations in accordance with the Act.

■ We conclude that section 104.6 of the Streets and Highways Code does not confer quasi-legislative powers and that, therefore, defendant was not required to promulgate regulations under the Act. The term "quasi" used as a prefix means "analogous to" (Black's Law Dict. (4th ed.)); or as "having some resemblance (as in function, effect or status) to a given thing." (Webster's Third New Internat. Dict.) Webster defines the term "quasi-legislative" as "having a partly legislative character by possession of the right to make rules and regulations having the force of law" and as "essentially legislative in character but not within the legislative power or function or belonging to the legislative branch of government as constitutionally defined." (Webster's Third New Internat. Dict.)

■ Generally, acts constituting a declaration of public purpose and making provision for ways and means of its accomplishment are classified as calling for the exercise of legislative power. (*Mefford* v. *City of Tulare,* 102 Cal.App.2d 919, 926 [228 P.2d 847]; *McKevitt* v. *City of Sacramento,* 55 Cal.App. 117, 124 [203 P. 132].) On the other hand, acts which are necessary to be done to carry out legislative policies and purposes already declared by the legislative body, or such as are devolved upon it by the

---

as may be applicable to the structure when acquired, of the city or county having jurisdiction which are in effect at the time of acquisition by the department.

"The department is authorized to lease any lands which are held for state highway purposes and are not presently needed therefor on such terms and conditions as the director may fix and to maintain and care for such property in order to secure rent therefrom. . . ."

[3]The exceptions are regulations not required to be filed with the Secretary of State and emergency regulations. (Gov. Code, § 11421.)

organic law of its existence, are deemed as acts of administration and classed among those governmental powers properly assigned to the executive department. (*Mefford* v. *City of Tulare, supra; McKevitt* v. *City of Sacramento, supra.*)

In the instant case the declaration of the public purpose and a provision for ways and means of its accomplishment is to be found as stated by the Legislature in its enactment of Streets and Highways Code section 104.6. The policy and duty of acquiring real property for the future needs of state highway purposes and the maintenance and leasing of such property was the "legislative act" of the state. (See *Simpson* v. *Hite,* 36 Cal.2d 125, 130 [222 P.2d 225].) The carrying out of this policy by performing the duty is an administrative function delegated by the state to the Department of Public Works (now the Department of Transportation). (See *Simpson* v. *Hite, supra.*) Here the basic policy was established by the state and the responsibility for carrying out that policy was vested in the Department of Public Works. The maintenance and leasing of the property acquired pursuant to the established policy were merely steps which the department took to carry out such policy.

In actuality the state (defendant) is functioning as a landlord, and the department is acting as its agent. Plaintiffs, in turn, in their relations with the state are tenants dealing with the landlord through its authorized agent, the department. Plaintiffs, as tenants, are entitled to pursue the legal remedies normally available to tenants. In the absence of a specific statute so declaring or agreement so specifying plaintiffs, as tenants, do not lose any of their rights merely because their landlord happens to be the State of California. No agreement or statute has been cited to us which makes the relation between plaintiffs and defendant different from that of the usual landlord-tenant relationship. We perceive that as tenants plaintiffs were entitled to invoke the provisions of Civil Code sections 1941 and 1941.1, providing that a lessor must make a dwelling house fit for its purpose, in the absence of an agreement to the contrary (see Civ. Code, §§ 1941.2 and 1942.1), and the provisions of Civil Code section 1942 providing that a lessee may make repairs which the landlord ought to make but fails to do so and deduct the cost thereof from the rent.

With respect to defendant, it is not required to perform duties as a landlord additional to those required of private landlords. Accordingly, neither it nor the department, as its agent, was required to enact rules and regulations for the conduct of the landlord-tenant relationship here involved. We are not persuaded, as was the court below, that the language reading "on such terms and conditions as the director may fix" contained

in section 104.6 of the Streets and Highways Code required that the director adopt rules and regulations in the exercise of a quasi-legislative power. To the contrary, this language is a specific authorization to the director, in the exercise of an administrative function delegated to him by the state and without further requirement, to fix the terms and conditions upon which the state will lease land held for highway purposes but not presently needed therefor.

As an indication of the fact that the Legislature did not intend to confer quasi-legislative power on defendant in enacting Streets and Highways Code section 104.6, we observe the provisions of section 118.6 of the same code, which was enacted in 1972, relating to the sale of excess land. That statute provides: ". . . The department shall adopt rules and regulations to determine which real property outside of calculated right-of-way lines is no longer needed or used for highway or other public purposes, and which is available for sale or exchange. The department is authorized to lease all real property not presently needed or used for highway purposes pending the sale or exchange of such property. . . ." Here the Legislature specifically provides for the adoption of rules and regulations. In section 104.6 there is no such provision. It seems clear to us, therefore, that the maintenance, leasing, and the collection of rent for the property acquired under section 104.6 was deemed by the Legislature to be an interim situation to continued management until the property was used for the purposes for which it was acquired or otherwise disposed of pursuant to law. (See 1 Sen. J. Appendix (1953 Reg. Sess.) Senate Interim Committee on Administrative Regulations, p. 56.)

Plaintiffs' reliance on *California Assn. of Nursing Homes etc. Inc.* v. *Williams,* 4 Cal.App.3d 800 [84 Cal.Rptr. 590, 85 Cal.Rptr. 735], and *Pitts* v. *Perluss,* 58 Cal.2d 824 [27 Cal.Rptr. 19, 377 P.2d 83], is misplaced. *California Assn. of Nursing Homes* is authority for the principle that once an agency *is* subject to the Act it must follow the rules in promulgating regulations. At issue was the validity of an administrative regulation prescribing the standard which determines the level of state payments for the care of Medi-Cal patients in nursing and convalescent homes. In that case Welfare and Institutions Code section 14105 specifically provided that the director shall adopt rules and regulations. In *Pitts,* the issue was whether an emergency regulation promulgated by the director was valid under the direction given the director by the Legislature to implement certain statutes by authorized regulations.

In view of the conclusion reached we need not consider the question whether a manual printed by defendant constitutes regulations which were

not published in compliance with the Act. It is also unnecessary to discuss the retroactivity issue raised by plaintiffs because, in view of the reversal which is required in this case, defendant will be entitled to the rents held in trust and such other rent properly owing to defendant that plaintiffs may not have paid into the trust fund.

Plaintiffs' request for attorney fees, in view of the result in this case, is not warranted either upon the basis that a substantial benefit has been conferred on the members of an ascertainable class (*Hall* v. *Cole,* 412 U.S. 1, 5 [36 L.Ed.2d 702, 707, 93 S.Ct. 1943]; *Mills* v. *Electric Auto-Lite,* 396 U.S. 375, 393-394 [24 L.Ed.2d 593, 607-608, 90 S.Ct. 616]), or on equitable principles under the theory that plaintiffs have prosecuted litigation benefiting the general public as "private attorneys general." (*Newman* v. *Piggie Park Enterprises,* 390 U.S. 400, 402 [19 L.Ed.2d 1263, 1265, 88 S.Ct. 964].)

The judgment is therefore reversed. As the conclusions to be drawn from the undisputed facts require judgment to be entered for defendant, the cause is remanded to the trial court to enter judgment in favor of defendant declaring that the rental increases noticed to plaintiffs on October 30, 1969, and October 31, 1970, are valid, and to determine the rents due defendant from the respective plaintiffs and enter judgment therefor in favor of defendant and against plaintiffs for the amounts prayed for in the cross-complaint.

Sims, J., and Elkington, J., concurred.

A petition for a rehearing was denied February 27, 1974, and respondents' petition for a hearing by the Supreme Court was denied March 27, 1974.