[Civ. No. 60516. Second Dist., Div. Three, Dec. 30, 1980.]

THE PEOPLE EX REL. DEPARTMENT OF TRANSPORTATION, Plaintiff and Respondent, v.
LINDA LUCERO et al., Defendants and Appellants.

COUNSEL

M. Judith Nishimoto, Richard A. Paez, William A. Snyder, Sandra Pettit and Charles F. Elsesser, Jr., for Defendants and Appellants.

Richard G. Rypinski, Joseph A. Montoya, Robert L. Meyer, Marianne M. Martin and John J. Mountain for Plaintiff and Respondent.

## OPINION

**POTTER, Acting P. J.**—Defendants Linda Lucero and Yolanda Solis appeal from the judgment of the Municipal Court for the Los Angeles Judicial District in consolidated unlawful detainer proceedings brought by plaintiff, the People of the State of California, acting by and through the Department of Transportation (hereinafter Caltrans). Defendants' appeals have been transferred to this court from the Appellate Department of the Superior Court for the County of Los Angeles, pursuant to rule 62, California Rules of Court. The judgment awarded Caltrans possession of and damages for withholding of residential premises in the City of Los Angeles acquired by Caltrans for future needs for state highway purposes and leased to defendants pursuant to Streets and Highways Code section 104.6 as "not presently needed" for such purposes.

The complaint alleges that each of the premises "was acquired for and now is held by plaintiff for State highway purposes," that the premises were rented to defendants by written rental agreement (attached as an exhibit) which provided "that the renting of the above premises is on a month-to-month basis," and that the tenant agrees "[t]o vacate said premises at any time within 30 days after receipt of a notice to do so from State." The complaint further alleges that "a thirty-day notice of termination of tenancy and notice to quit" was duly served upon each of the defendants. A copy of the notice attached to the complaints in each case shows that no violation of any covenant of the lease or other ground for termination was therein specified; it was simply an exercise of the landlord's right to terminate a month-to-month tenancy "in accordance with provisions of the Civil Code of California, including Section 1946." As a result of the expiration of the notice, plaintiff alleges it "is entitled to possession of the subject premises" of which "defendants continue in possession...without plaintiff's permission or consent, and contrary to the terms of the subject rental agreement."

Both defendants answered, generally denying that plaintiff was entitled to possession, and asserting as affirmative defenses claims that: (1) the notices to quit were served "for the purpose of discriminating

against defendant as an unmarried woman and single parent, in violation of the Unruh Civil Right Act, Civil Code section 51," and (2) "plaintiff does not have a reasonable and valid business interest in evicting [defendant] from the premises," in consequence of which the eviction "is arbitrary" and in violation of the Unruh Act.

At the trial, the parties stipulated to all the above facts alleged in the complaint, except plaintiff's right to possession. Testimony and documentary evidence was received relating to plaintiff's reasons for terminating the rental agreements. This evidence, which was conflicting, included testimony that defendant Lucero had disturbed her neighbor, and that defendant Solis had repeatedly failed to maintain the premises in a reasonable condition.

At the request of defendants, the trial court made written findings of fact and conclusions of law. Significant facts found, in addition to those stipulated to, were the following: "Plaintiff's action taken to terminate the Lucero tenancy was on the basis of responsible complaints from neighbors about excessive noise at late hours, and misconduct by an occupant of that apartment, reported to its agent, William Zamora.

"Plaintiff's action taken to terminate the Solis tenancy was on the basis of persistent problems of lack of yard maintenance by the tenant, personally observed by plaintiff agent, William Zamora.

". . . . . . . . . . . . . . .

"There was no retaliatory eviction by plaintiff in either of these consolidated cases.

"Plaintiff's action was not motivated by discrimination against single female heads of household.

"Plaintiff has a reasonable and valid business interest in terminating the Lucero and Solis tenancies."[1]

The court concluded from the foregoing findings that "Plaintiff is entitled to possession and restitution of the premises in each case. The

---

[1]The last three findings were labeled "Conclusions of Law." It is, however, apparent that they are findings of fact, the effect of which is not changed by the label. (*Gossman v. Gossman* (1942) 52 Cal.App.2d 184, 191 [126 Cal.Rptr. 178].)

tenancies were properly terminated by the expiration of the 30-day notice as of August 18, 1978." Accordingly, the court entered judgment awarding plaintiff possession of both premises and damages for the rental value.

## Contentions

Defendants contend that the court erred in terminating their tenancies because: (1) they have a "property interest," protected by due process, to enjoy a continuation of their tenancies unless "good cause" exists for their termination; (2) due process requires that such termination be preceded by advance notice of the good cause therefor, followed by a hearing at which such good cause is proved by Caltrans, and (3) such due process was denied them in that (a) neither the notices to quit nor the complaints gave notice of any good cause for termination, and (b) "good cause" was not shown by the evidence.

Caltrans contends that: (1) defendants' tenancies were terminable by 30 days' notice without cause, (2) due process has been accorded them in respect of such termination, and (3) "adequate grounds" for termination of their tenancies, though not required, were shown by the evidence in the trial court.

## Discussion

### Summary

Under the law in effect at the time defendants' tenancies were terminated by notice, they had no property interest termination of which required good cause. Consequently, the proceedings based upon the notice to quit were adequate due process. The evidence clearly supported the trial court's determination that the eviction of defendants was not illegally motivated. The trial court judgments should, therefore, be affirmed.

### Defendants' "Property Interest" Was Limited to a Month-to-Month Tenancy Terminable by a 30-Day Notice to Quit

There is no question that defendants had a property interest in their month-to-month tenancies which entitled them to continued occupancy until expiration of a 30-day notice to quit. Further, before a judgment

evicting them was entered, they were entitled to a due process hearing as to whether the tenancies had been effectively so terminated. Defendants clearly were afforded due process in respect of this property interest. They assert, however, a greater property interest—a tenancy terminable only for "good cause"—and claim denial of due process in respect of that right, in that neither the notice to quit nor the complaint gave notice of any such ground for termination.

■ The state must comply with procedural due process before it may deprive its citizens of a property interest in a governmental benefit to which they have a legitimate claim of entitlement. The threshold issue in respect of any such claim is whether there exists the requisite "property interest." In *Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194 [124 Cal.Rptr. 14, 539 P.2d 774], our Supreme Court held that a civil service employee who was a "permanent employee" had such a property interest. In so doing, it defined the requirements for the establishment of any such interest. It said in this respect (*id.*, at pp. 206-208): "We begin our analysis in the instant case by observing that the California statutory scheme regulating civil service employment confers upon an individual who achieves the status of 'permanent employee' a property interest in the continuation of his employment which is protected by due process. In *Board of Regents* v. *Roth* (1972) 408 U.S. 564 [33 L.Ed.2d 548, 92 S.Ct. 2701], the United States Supreme Court 'made clear that the property interests protected by procedural due process extend well beyond actual ownership of real estate, chattels, or money. [Fn. omitted.]' (*Id.*, at pp. 571-572 [33 L.Ed.2d at p. 557].) Rather, '[t]he Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits. These interests—property interests—may take many forms.' (*Id.*, at p. 576 [33 L.Ed.2d at p. 560].)

"Expanding upon its explanation, the *Roth* court noted: 'To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.

"'Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by *existing rules or understandings* that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.' (*Id.*, at p. 577 [33 L.Ed.2d at p. 561].)

"Thus, when a person has a *legally enforceable right to receive a government benefit* provided certain facts exist, this right constitutes a property interest protected by due process. (*Goldberg* v. *Kelly* (1970) 397 U.S. 254, 261-262 [25 L.Ed.2d 287, 295-296, 90 S.Ct. 1011]. . . .

"The California Act endows state employees who attain permanent status with a substantially identical property interest. Such employees may not be dismissed or subjected to other disciplinary measures unless facts exist constituting 'cause' for such discipline as defined in sections 19572 and 19573. In the absence of sufficient cause, the permanent employee has a statutory right to continued employment free of these punitive measures. (§ 19500.) This statutory right constitutes 'a legitimate claim of entitlement' to a government benefit within the meaning of *Roth*. Therefore, the state must comply with procedural due process requirements before it may deprive its permanent employee of this property interest by punitive action." (Italics added.)

The foregoing makes it clear that in order for there to be a "property interest" subject to due process protection, there must be some "government benefit" to which "a person has a legally enforceable right." Moreover, such rights "'are not created by the Constitution.'" Rather, they are "'created and their dimensions are defined by *existing* rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" (*Id.*, at p. 207.) (Italics added.) In *Skelly*, such an enforceable right was found to be created by the existing legislation providing that state employees who attained permanent status could not be dismissed or subjected to other disciplinary measures unless facts existed constituting cause for such discipline as therein defined.

Clearly, *Skelly* does not stand for the proposition that every beneficial contractual status with a governmental agency constitutes a property interest protected by due process. The court was careful to point out that it was dealing with "employees who attained permanent

status" so as to distinguish that status from probationary status in respect of which a lesser degree of protection applies. See *Bogacki v. Board of Supervisors* (1971) 5 Cal.3d 771, 778 [97 Cal.Rptr. 657, 489 P.2d 537] where the court said: "It is now well-settled that even a probationary public employee or one serving at the pleasure of the appointing authority may not be dismissed from his employment for the exercise of constitutional rights absent a showing that the restraints which the employing body would impose on those rights are justified by a compelling public interest. (*Bagley v. Washington Township Hospital Dist.* (1966) 65 Cal.2d 499, 503-505 [55 Cal.Rptr. 401, 421 P.2d 409]; *Rosenfield v. Malcolm* (1967) 65 Cal.2d 559, 562-563 [55 Cal.Rptr. 505, 421 P.2d 697]; *Ball v. City Council* (1967) 252 Cal.App.2d 136, 141 [60 Cal.Rptr. 139]; see also, *Fort v. Civil Service Commission* (1964) 61 Cal.2d 331 [38 Cal.Rptr. 625, 392 P.2d 385]; cf. *Hollon v. Pierce* (1967) 257 Cal.App.2d 468, 478, fn. 4 [64 Cal.Rptr. 808] and accompanying text.) It is equally clear, however, that such an employee bears the burden of showing that he was in fact dismissed because he exercised constitutional rights in defiance of restraints sought to be placed by the employing agency. (*Stanton v. Dumke* (1966) 64 Cal.2d 199, 205-207 [49 Cal.Rptr. 380, 411 P.2d 108].) In the absence of such a showing the courts will not intervene. (See *Rosenfield v. Malcolm, supra,* 65 Cal.2d 559, 563-564.)"

■ The issue, then, is whether existing state law gave defendants a legally enforceable right to continue their tenancies until terminated for good cause. There existed a considerable volume of state law governing the rights of month-to-month tenants. The basic provision, of course, was Civil Code section 1946 which continued all such tenancies in effect unless one of the parties gave written notice to the other of his intention to terminate the same 30 days in advance. Under section 1946, it is clear that a landlord "may normally evict a tenant for any reason or for no reason at all...." (*S.P. Growers Assn. v. Rodriguez* (1976) 17 Cal.3d 719, 730 [131 Cal.Rptr. 761, 552 P.2d 721].)

Several exceptions to this general rule have been created by case and statutory law of this state. The broadest departure is in relation to government subsidized housing for low and moderate income families. In *Appel v. Beyer* (1974) 39 Cal.App.3d Supp. 7 [114 Cal.Rptr. 336], the Appellate Department of the Los Angeles Superior Court held that tenants in housing projects financed under the Housing and Urban Development Act of 1965 (12 U.S.C. § 1701s) had a property interest requiring notice of good cause and proof thereof at a hearing before

their month-to-month tenancies were terminated. The court relied upon several federal decisions imposing such requirement to carry out the policy of the act to provide affordable housing for low and moderate income families.

In 1977, the California Legislature enacted a similar requirement in respect of housing projects financed by the California Housing Finance Agency. Health and Safety Code section 51066 requires that any notice to quit served upon a tenant of any such housing "shall contain a statement of the cause for eviction and of the right of the tenant to a hearing and decision pursuant to regulations of the agency." It is thus easy to establish a status of entitlement for the tenants of housing which has been established to implement government policy to provide affordable housing for low and moderate income families.

Month-to-month tenants are also protected from retaliatory eviction by the provisions of Civil Code section 1942.5 which, within the prescribed period after an attempt at retaliatory eviction, requires the landlord to have a "good faith" ground to seek to recover possession.

Local rent control ordinances customarily limit evictions to cases in which good cause is shown. However, the pertinent Los Angeles ordinance expressly exempts from its operation "housing accommodations which a government unit, agency or authority owns, operates or manages...."

None of the foregoing exceptions to the general rule that month-to-month tenancies are terminable on 30 days' notice with or without cause was applicable to defendants' tenancies. Defendants did not claim retaliatory eviction, nor that they were entitled to protection under the Los Angeles Rent Control Ordinance. They sought, rather, to equate their situation with that of tenants of publicly financed housing for families of low or moderate income. Defendants' argument, however, incorrectly assumes that the premises were implements of this state's housing policy, and that by renting them to defendants, Caltrans bestowed some benefit pursuant to such policy within the rationale of the decision in *Appel* and of Health and Safety Code section 51066.

The difficulty with defendants' argument is that as of the time their tenancies were terminated by the trial court judgment, the premises were not instrumentalities of such policy. They were leased to defendants under the provisions of section 104.6 of the Streets and Highways

Code which authorized Caltrans to do so "in order to secure rent therefrom." Such rent, moreover, was required to be deposited "to the credit of the State Highway Account in the State Transportation Fund." These provisions clearly evidence the legislative intent that the properties, like the funds with which they were purchased, be utilized strictly for highway purposes pursuant to article XIX, section 1, of the California Constitution and do not contemplate tenants acquiring status by entitlement which would burden the realization of rental therefrom by increasing the cost of eviction proceedings.

Section 104.6 was so construed by the First District of this court in *Hubbs* v. *People* ex rel. *Dept. Pub. Wks.* (1974) 36 Cal.App.3d 1005, 1009 [112 Cal.Rptr. 172], where the court said: "In actuality the state (defendant) is functioning as a landlord, and the department is acting as its agent. Plaintiffs, in turn, in their relations with the state are tenants dealing with the landlord through its authorized agent, the department. Plaintiffs, as tenants, are entitled to pursue the legal remedies normally available to tenants. . . . No agreement or statute has been cited to us which makes the relation between plaintiffs and defendant different from that of the usual landlord-tenant relationship. . . .

"With respect to defendant, it is not required to perform duties as a landlord additional to those required of private landlords."

It was not until September 28, 1979, after the judgment in this case, that the Legislature first acted to make properties acquired for highway purposes instrumentalities of state housing policy. At that time, Government Code sections 54235-54238.6 were enacted governing the disposal of "surplus residential property owned by agencies of the state." These sections, which apply to Caltrans property, implement the Legislature's intent "to preserve, upgrade and expand the supply of housing available to persons and families of low and moderate income." To carry out this purpose, the disposition of residential property "no longer necessary for such agency's use, and which is developed as single-family or multi-family housing" is subject to priorities in favor of "present occupants who have occupied the property two years or more and who are persons and families of low or moderate income."

We need not decide whether the benefits thus bestowed upon occupants give them a status of entitlement limiting Caltrans' right to terminate tenancies of properties which (like those here involved) have

not been determined to be surplus,[2] because any such entitlement was not created until the enactment of the section. Such entitlement could not, therefore, be a property interest "'created and . . . defined by *existing* rules or understandings that stem from an independent source such as state law . . . .'" (*Skelly* v. *State Personnel Bd., supra,* 15 Cal.3d at p. 207; italics added) at the time defendants' tenancies were terminated prior to the enactment of these provisions.

We conclude, therefore, that at the time of the termination of defendants' tenancies by the judgment in the trial court, they had no property interest in the continuation of their tenancies beyond the expiration of the 30-day notice to quit. Consequently, the proceedings based upon the notice to quit were adequate due process.

### *The Terminations of Defendants' Tenancies Were Not Illegally Motivated*

The trial court found that there was no illegal motivation for the termination of defendants' tenancies. ▄ These findings were pertinent because, even though good cause was not required, public agencies should not be entitled to deprive persons of any beneficial status for improper reasons, such as unlawful discrimination or retaliation for exercise of constitutional rights. (See *Bogacki* v. *Board of Supervisors, supra,* 5 Cal.3d at p. 778.) Defendants pleaded defenses based on such discrimination. In their briefs, defendants argue that the evidence does not support a finding that there was "good cause" for termination. They do not, however, suggest that the evidence failed to support the court's findings that there was no retaliatory or discriminatory motivation for

---

[2]Arguably, tenants who have enjoyed two years of occupancy have a property interest in remaining in occupancy so as to be in a position to benefit if the property becomes surplus. Recognition of such an interest would justify some restriction on the right to terminate. However, any such restriction would far better be created and defined by legislation than by court opinion since there are several choices available. Compare in this respect: (1) Health and Safety Code section 51066, which provides for agency regulations defining "cause for eviction"; (2) Civil Code section 1942.5, subdivision (e), requiring existence of a "ground upon which the lessor, in good faith, seeks to recover possession"; (3) Los Angeles City Ordinance No. 154,237, specifying 10 grounds, including: "2. The tenant has violated a lawful obligation or covenant of the tenancy, other than the obligation to surrender possession upon proper notice and has failed to cure such violation after having received written notice thereof from the landlord"; and (4) the limitation created in *Appel* v. *Beyer, supra,* 39 Cal.App.3d Supp. at pages 19-20, requiring "good cause" which might be "found in the definition of 'undesirable' tenants set forth in regulations of the supervising public agency [citations] or in the 'standards for eligibility' established by such regulations [citation] or simply in destructive or anti-social conduct of the tenant [citation]."

the evictions. An examination of the record demonstrates that these findings were fully justified by the evidence. There was, in fact, a total absence of any evidence suggesting either such motivation.

The judgments are affirmed.

Cobey, J., and Allport, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied March 18, 1981. Bird, C. J., was of the opinion that the petition should be granted.