[No. A108702. First Dist., Div. One. May 23, 2006.]

J. W. SILVEIRA, Plaintiff and Appellant, v.
COUNTY OF ALAMEDA, Defendant and Respondent.

COUNSEL

Shapiro Buchman Provine & Patton, Bruce A. McIntosh, Rhonda D. Shelton and Mary L. Perry for Plaintiff and Appellant.

Richard E. Winnie, County Counsel, and Claude F. Kolm, Deputy County Counsel, for Defendant and Respondent.

OPINION

MARCHIANO, P. J.—Plaintiff J. W. Silveira seeks refunds of possessory interest taxes paid in several years to defendant County of Alameda on his month-to-month tenancy with the City of Oakland. He contests the years-long anticipated terms of possession used to calculate the value of his possessory interest, arguing that, under the decision in *American Airlines, Inc. v. County of Los Angeles* (1976) 65 Cal.App.3d 325 [135 Cal.Rptr. 261] (*American Airlines*) and for other reasons, he could not lawfully be taxed based on a term of possession longer than one month. We disagree with plaintiff's reading of *American Airlines* and with his other arguments, and accordingly affirm the judgment against him.

## I. FACTUAL BACKGROUND

Plaintiff has been in possession of the 5th Avenue Marina in Oakland since 1967. He had a one-year "License and Concession" agreement with the Port

of Oakland that ended on September 30, 1990. He has occupied the property since then under a month-to-month holdover provision in the agreement stating: "If Licensee with the Port's consent holds over the use of said premises after the term of this agreement has terminated in any manner, such holding over shall be deemed merely a holding from month to month and at a monthly rental to be fixed from time to time by the Port, payable monthly in advance, but otherwise on the same terms and conditions as herein provided."

Plaintiff sought reassessments and refunds from the Alameda County Assessment Appeals Board (AAB) for the 1998, 2001, and 2002 tax years on the ground that improper market values had been placed on his possessory interest in the marina for those years.[1] Those values were originally set at $329,460 for 1998, $342,275 for 2001, and $356,103 for 2002, based on anticipated eight-year terms of possession.[2] By the time of the AAB hearing on plaintiff's appeals, the county assessor was recommending reduced market values for the possessory interest: $180,000 for 1998, $235,000 for 2001, and $155,000 for 2002, based on anticipated terms of possession of five, five, and three years, respectively. Plaintiff argued for a market value of $20,000 for each of the three years based on a one-month term of possession.

The AAB determined that the assessor's recommended values were the fair market values of the possessory interests for the years at issue, whereupon plaintiff filed this suit for refunds. The court granted defendant's motion for summary judgment, and plaintiff has appealed from the ensuing judgment.

## II. DISCUSSION

### A. *Legal Background*

■ As stated in *City of San Jose v. Carlson* (1997) 57 Cal.App.4th 1348, 1352 [67 Cal.Rptr.2d 719]: "Because the facilities at issue are owned by the City, they are not subject to real property taxes. (Cal. Const., art. XIII, § 3.) Private uses of such property may be taxed, however, if those uses constitute 'possessory interests.' (Cal. Const., art. XIII, § 1; Rev. & Tax. Code, §§ 104, 107, 201.) As the Supreme Court has explained, 'When the city leases its

---

[1] Under California Constitution, article XIII, section 1, subdivision (a), property is generally to be assessed as a percentage of its fair market value. (See also Rev. & Tax. Code, §§ 401 [property subject to general property taxation must be assessed at its full value], 110.) "Since the possessory interest must be assessed in accord with the standard of valuation applicable to all other property, its estimated value is the price it would bring if offered on an open market under conditions in which neither buyer nor seller could take advantage of the exigencies of the other, and this hypothetical market price is its value even though a sale of the property has not been made or contemplated." (*De Luz Homes, Inc. v. County of San Diego* (1955) 45 Cal.2d 546, 563 [290 P.2d 544].)

[2] 1997 taxes, not at issue here, were based on a 14-year anticipated term of possession.

land . . . it does not merely use it. It creates valuable privately-held possessory interests, and there is no reason why the owners of such interests should not pay taxes on them just as lessees of private property do through increased rents. Their use is not public, but private, and as such should carry its share of the tax burden.' (*Texas Co. v. County of Los Angeles* (1959) [52 Cal.2d 55, 63, 338 P.2d 440].) Thus, taxation of possessory interests is rooted in the belief that 'the holder of a valuable use of public property that is tax exempt should contribute taxes to the public entity which makes its possession possible and provides a certain amount of exclusivity.' (*Freeman v. County of Fresno* (1981) [126 Cal.App.3d 459, 463, 178 Cal.Rptr. 764]; see also *People v. Shearer* (1866) 30 Cal. 645, 657 [since possessory interests are 'a species of property' the user should 'contribute its proper share . . . of the taxes necessary to sustain the Government which recognizes and protects it']; *Stadium Concessions, Inc. v. City of Los Angeles* (1976) [60 Cal.App.3d 215, 225, 131 Cal.Rptr. 442] [purpose is to protect public domain from private profit making without tax liability].)" (*City of San Jose v. Carlson, supra,* 57 Cal.App.4th at pp. 1352–1353.)

"Pursuant to the directive of the legislature, the State Board of Equalization [(SBE)] has adopted comprehensive rules relating to the valuation of all types of possessory interests." (2 Ehrman & Flavin, Taxing Cal. Property (2005 Supp.) § 18:04, p. 6, fn. omitted; see Gov. Code, § 15606 [enumerating SBE's powers].) The rules in question were amended and consolidated in July 2002 and are presently set forth in California Code of Regulations, title 18, section 21. The record herein includes a portion of the SBE's Final Statement of Reasons for the change, which explained that:

"A taxable possessory interest is a privately held property interest in publicly owned real property that meets certain statutory criteria set forth in section 107 of the Revenue and Taxation Code.[3] Most taxable possessory interests are created by permits and leases granting possessory rights in government land to private parties. [¶] Since a taxable possessory interest is by definition a property interest of limited duration, an assessor valuing a taxable possessory interest must determine a 'term of possession.' . . . [¶] The term of possession is a significant variable in possessory interest valuation, and the assessor reviews it on each lien, or valuation, date. The term of possession is particularly important when the assessor uses the 'direct income method,' which is the most widely used possessory interest valuation method. Under this method, the value of the taxable possessory interest is estimated

---

[3] This statute defines "possessory interests" in part to mean "[p]ossession of, claim to, or right to the possession of land or improvements that is independent, durable, and exclusive of rights held by others in the property," and defines "durable" to mean "for a determinable period with a reasonable certainty that the use, possession, or claim with respect to the property or improvements will continue for that period." (Rev. & Tax. Code, § 107, subd. (a) & (a)(2).)

by discounting the annual economic rent attributable to the taxable possessory interest over a specified term of possession. Since the term of possession determines the number of annual income payments that will be discounted, it significantly affects the assessed value."

The rule applicable to the assessments in this case (former Cal. Code Regs., tit. 18, § 23 [hereafter rule 23]) provided: "(a) When a written instrument creating a possessory interest specifies a period of occupancy which is to exist, the stated period shall be taken as the term of possession for purposes of valuation except as provided in this section. An option period shall be considered part of the stated period if it is reasonable to conclude that the option will be exercised. [¶] (b) Should a period thus determined be in conflict with the reasonably anticipated term of possession by the possessor and any successor to or assignee of the property interest, the reasonably anticipated term of possession, whether shorter or longer, shall be used instead of the stated period. In determining the reasonably anticipated term of possession, the assessor shall be guided by the intent of the public owner and the possessor, as indicated by such evidence as (1) sale prices of the subject or similar possessory interests, (2) the history of the property's use, (3) the policy of the public agency administering the lands, and (4) the actions of the possessor. No reduction or increase of the specified period shall be based on the life expectancy of the possessor if it is reasonably anticipated that possession will continue under his successors or assigns. [¶] (c) When there is no stated term of possession, the term shall be determined in accordance with subsection (b)."[4]

---

[4] The current rule, which plaintiff does not regard as different in substance from the former one, states: "(1) The term of possession for valuation purposes shall be the reasonably anticipated term of possession. The stated term of possession shall be deemed the reasonably anticipated term of possession unless it is demonstrated by clear and convincing evidence that the public owner and the private possessor have reached a mutual understanding or agreement, whether or not in writing, such that the reasonably anticipated term of possession is shorter or longer than the stated term of possession. If so demonstrated, the term of possession shall be the stated term of possession as modified by the terms of the mutual understanding or agreement. [¶] (2) If there is no stated term of possession, the reasonably anticipated term of possession shall be demonstrated by the intent of the public owner and the private possessor, and by the intent of similarly situated parties, using criteria such as the following: [¶] (A) The sale price of the subject taxable possessory interest and sales prices of comparable taxable possessory interests. [¶] (B) The rules, policies, and customs of the public owner and of similarly situated public owners. [¶] (C) The customs and practices of the private possessor and of similarly situated private possessors. [¶] (D) The history of the relationship of the public owner and the private possessor and the histories of the relationships of similarly situated public owners and private possessors. [¶] (E) The actions of the parties to the subject taxable possessory interest, including any amounts invested in improvements by the public owner or the private possessor. [¶] (3) For the purposes of this regulation, a taxable possessory interest that runs from month to month, a taxable possessory interest without fixed term, or a taxable

### B. *Terms of Possession*

Plaintiff argues that his tax liability could not lawfully be based on terms of possession longer than one month. The trial court's determination to the contrary is subject to our de novo review. (*Freeport-McMoran Resource Partners v. County of Lake* (1993) 12 Cal.App.4th 634, 640 [16 Cal.Rptr.2d 428].)

Plaintiff's main argument is that the terms of possession applied here are prohibited by the decision in *American Airlines, supra,* 65 Cal.App.3d 325. The plaintiffs in that case were airlines that leased passenger terminals at Los Angeles International Airport. The leases were for 28 years, with no option to renew. In the tax years in question, the leases had a remaining term of 18 and 17 years, but were assessed under rule 23 based on a 25- and 24-year "reasonably anticipated term of possession." The airlines sued for refunds on the ground that the anticipated terms of possession should have been limited to the remaining terms of their leases. The airlines prevailed at trial and on appeal. (*American Airlines, supra,* at pp. 328, 332.)

The court noted that "[r]ule 23 unquestionably sanctions the assessment of taxes based upon the 'reasonably anticipated term of possession' of a possessory interest where the creating lease itself limits possession to a shorter term," and thus that "the validity of the rule as applied to these plaintiffs rather than its construction" was at issue. (*American Airlines, supra,* 65 Cal.App.3d at p. 328.) The court held that the airlines could not be "taxed on something they do not have, namely possessory interests extending beyond the terms of their leases." (*American Airlines, supra,* at p. 331.) "[I]n this case the airlines have no possessory interests in the leased premises following expiration of the terms of the leases, that is, no possession, claim or right thereto, as required by Revenue and Taxation Code section 107. Nor does it appear, however one describes the airlines' relation to the leased property at the end of their leases, as hope or expectation of future use, that it is 'capable of private ownership' as property must be. (Rev. & Tax. Code, § 103.) Accordingly, insofar as rule 23 permits the challenged method of assessment here, we declare the same to be invalid." (*American Airlines, supra,* at p. 332, fn. omitted.)

The *American Airlines* appellants "suggest[ed] that in reality the airlines ha[d] 'de facto options' to renew the leases," but the record did not support that contention: "[T]he airlines insist that there are no understandings or agreements providing for renewal, and appellants, who are in the best

---

possessory interest of otherwise unspecified duration shall be deemed to be a taxable possessory interest with no stated term of possession." (Cal. Code Regs., tit. 18, § 21 [hereafter rule 21], subd. (d).)

position to refute this assertion, have not tried to do so." (*American Airlines*, *supra*, 65 Cal.App.3d at pp. 329–330, fn. omitted.) Contrary to the appellants' claim, the airport's real estate manager testified "that there were no understandings, agreements, negotiations or discussions between any of the airlines and LAX relating to extension of the leases; and that the department of airports had not at the time formed any intention as to whether or not the leases would be renewed." (*Id.* at p. 330, fn. 4.) The "anticipated term of possession" beyond the stated term of the leases was, therefore, "unsupported": ". . . it seems that appellants are simply attempting to appeal to some expectation that, airlines being airlines and needing the use of an airport, and airports being airports and having their patronage now, of necessity the two will get together somehow. Of course, this unsupported expectation fails to take into account the many changes which will occur in the airline industry in general, and at LAX in particular during the next decade and a half." (*Id.* at p. 330, fn. omitted.)

The court distinguished cases involving an option to renew (*American Airlines*, *supra*, 65 Cal.App.3d at p. 329), and those involving a "defeasible interest," i.e., "leases terminable by the lessor either at will or upon the happening of some contingency" (*id.* at p. 331; see, e.g., *De Luz Homes, Inc. v. County of San Diego*, *supra*, 45 Cal.2d at pp. 554, 574 [directing that possessory interest be valued based on remaining terms of 75-year leases, notwithstanding the government's right to terminate the leases after 50 years, where "the terms of the leases and the statute under which they were drawn . . . clearly contemplate that the leases will exist for their full terms"]; *Kaiser Co. v. Reid* (1947) 30 Cal.2d 610, 618–620 [184 P.2d 879] [lessee's time of possession was "reasonably estimated" to be one year although lease was subject to earlier termination upon certain conditions]).

The court also distinguished situations where the anticipated term of possession is based on an understanding between the parties or an expectation of "substance": "Of course, if the two parties do reach an 'understanding' as to renewal, the option cases would seem to govern. And if the 'expectation' of the parties is based on statute . . . or contract or indeed has any real substance at all, something in the nature of a defeasible interest would seem to arise and the termination cases would be relevant. But again, there is no indication here that the airlines have anything more than their leases and, perhaps, the hope that renewal of the leases will be possible and that conditions will remain such as to make renewal desirable." (*American Airlines*, *supra*, 65 Cal.App.3d at pp. 331–332, fn. omitted.) While the evidence might have supported a finding that the airlines intended to renew the leases, they "ha[d] no claim or right to the leased property after [expiration of the stated term]." (*Id.* at pp. 331–332, fn. 8.)

Plaintiff reads *American Airlines* to preclude application of an anticipated term of possession longer than the term specified in a lease, and submits that, as of any lien date on which his taxes are assessed, his lease is for a term of only one month. He reasons that "a month-to-month tenancy extends month after month until notice to terminate is given," "[e]ach extension is a taxable change in ownership that [defendant] can separately assess," and "[t]hus, for any given year, [he] would ultimately pay property taxes on 12 separate one-month leases." He asks us to order that his taxes be recalculated "based on the interest [he] actually possesses," and to "invalidate Rule 23 and its modern derivative—Rule 21—to the extent that they direct an assessor to impute a possessory period at odds with the written lease."

■ We do not agree with plaintiff's characterization of his lease as a series of one-month tenancies that are extended at monthly intervals. A month-to-month tenancy is not generally viewed as a tenancy for a fixed term that is periodically extended, but rather as a tenancy having no fixed term that continues indefinitely until terminated. (See *Miller & Desatnik Management Co. v. Bullock* (1990) 221 Cal.App.3d Supp. 13, 18 [270 Cal.Rptr. 600] [month-to-month tenancy has no fixed term]; *People ex rel. Dept. of Transportation v. Lucero* (1980) 114 Cal.App.3d 166, 170 [170 Cal.Rptr. 554] [month-to-month tenant is entitled to continued occupancy until expiration of 30-day notice]; 12 Witkin, Summary of Cal. Law (10th ed. 2005) Real Property, §§ 507–508, pp. 584–585 [periodic month-to-month tenancies are a form of tenancy at will; a tenancy at will has no fixed term]; 4 Thompson on Real Property (2d ed. 2004) § 39.05(b)(2), p. 581 [periodic tenancy continues indefinitely until terminated by proper notice].) Thus, month-to-month tenancies are properly treated for possessory interest tax purposes as having "no stated term of possession" as now expressly provided in rule 21, subdivision (d)(3).

■ Since plaintiff's lease is not for a stated term, *American Airlines* would not assist him even if, as he argues, that case limits the taxable term of possession to the stated term of a lease. As we have said, *American Airlines* itself distinguished cases like the one here involving leases terminable at will, where it is possible to "valuate a defeasible interest." (*American Airlines, supra,* 65 Cal.App.3d at p. 331.) The "termination cases," to use *American Airlines*'s terminology, show that a term of possession can include time when the right to possession can be terminated. (E.g., *De Luz Homes, Inc. v. County of San Diego, supra,* 45 Cal.2d at pp. 554, 574 [terms of possession were remaining terms of leases, despite lessor's ability to terminate them before they expired].) Where termination is possible, the taxpayer will have what plaintiff calls only the "*potential* for additional possession," but he is incorrect to maintain that this "mere potentiality" cannot be taxed. It is settled that the possibility of termination merely affects the value of the possessory interest, not its taxability. (*City of San Jose v. Carlson, supra,* 57 Cal.App.4th

at p. 1354; *Board of Supervisors v. Archer* (1971) 18 Cal.App.3d 717, 725 [96 Cal.Rptr. 379]; *McCaslin v. DeCamp* (1967) 248 Cal.App.2d 13, 18 [56 Cal.Rptr. 42].)

*American Airlines* does not stand for the proposition that the taxable term of possession can never exceed the stated term of a lease. There were simply no facts in *American Airlines* on which to find that the leases in that case would be extended beyond their stated terms. Since the lessor had not decided whether the leases would be renewed, and the parties had never discussed and had no understandings on the matter (*American Airlines, supra*, 65 Cal.App.3d at p. 330, fn. 4), expectation of an extension was entirely "unsupported" (*id.* at p. 330) and lacked "any real substance at all" (*id.* at p. 331). None of these observations would have been relevant if, as plaintiff contends, the stated terms of the leases were by themselves controlling. Under *American Airlines*, the question is whether there is "support" of "real substance" for the term of possession used.

Former rule 23 identified several areas where such support could be found: ". . . (1) sale prices of the subject or similar possessory interests, (2) the history of the property's use, (3) the policy of the public agency administering the lands, and (4) the actions of the possessor. . . ." We do not agree with plaintiff that *American Airlines* disapproved rule 23 insofar as the rule permitted an anticipated term of possession to exceed a lease's stated term.[5] The court addressed only "the validity of the rule as applied to these plaintiffs" (*American Airlines, supra*, 65 Cal.App.3d at p. 328), and found the rule invalid only insofar as it could be read to allow an anticipated term of possession to be based on an unsupported expectation (*American Airlines, supra*, at pp. 330, 332).[6]

Plaintiff maintains, again based on *American Airlines*, that the anticipated terms of possession used here violate Revenue and Taxation Code sections 103 and 107 (hereafter sections 103, 107). As we have noted (*ante*, fn. 3), section

---

[5] The SBE persuasively rejected this argument when it was made by the California Taxpayers Association in connection with the replacement of rule 23 with rule 21, subdivision (d). (SBE Issue Paper No. 01-018 (May 21, 2001) <http://www.boe.ca.gov/proptaxes/pdf/01-018.pdf> [as of May 23, 2006]; see *PG&E Corp. v. Public Utilities Com.* (2004) 118 Cal.App.4th 1174, 1204, fn. 25 [13 Cal.Rptr.3d 630] [appellate court may take judicial notice of legislative history materials on its own motion].)

[6] The *American Airlines* court could have reached the same decision by applying the four factors of rule 23 without any pronouncement on the rule's validity, because those factors did not support terms of possession beyond the stated terms of the leases in that case. There was: (1) no record of sale prices of the subject or similar possessory interests, (2) no history of lease extensions, (3) no public agency policy on the extensions in question, and (4) no history of holding over by the tenants. With respect to the fourth factor, there was conflicting evidence as to whether the tenants even hoped or intended to renew the leases. (*American Airlines, supra*, 65 Cal.App.3d at pp. 331–332, fn. 8.)

107 defines a taxable possessory interest to mean among other things "[p]ossession of, claim to, or right to the possession of land or improvements . . . ." *American Airlines* described the tenants' interest in continued possession after the stated terms of their leases as a "hope or intention," rather than a "claim or right" (*American Airlines, supra,* 65 Cal.App.3d at pp. 331–332, fn. 8), and concluded that this interest did not satisfy the above quoted criteria of section 107 (*American Airlines, supra,* at p. 332). Plaintiff argues that, as a month-to-month tenant, he, too, has no taxable "right" to continued possession beyond one month as required by section 107 and *American Airlines.*

■ However, plaintiff has the same "right" to continued possession as any tenant whose interest is subject to termination or renewal, and the cases, again, are clear that "any 'instability of rights' affect[s] only the *value* of the interest," not its taxability. (*City of San Jose v. Carlson, supra,* 57 Cal.App.4th at p. 1354.) Section 107 refers to actual possession as well as the "right" to possess, and "[t]he possession itself of public lands and the improvements thereon is a valuable property interest and is assessable." (*McCaslin v. DeCamp, supra,* 248 Cal.App.2d at p. 16.) ■ Here, plaintiff possessed the marina on the lien dates when the value of his possessory interest was determined,[7] and had been in possession of the property for many years. Plaintiff, therefore, had a durable possessory interest in the marina even though his lease could be terminated (*McCaslin, supra,* at p. 18; see also *Board of Supervisors v. Archer, supra,* 18 Cal.App.3d at p. 725); the only question was how long his possession was "reasonabl[y] certain[]" to continue (§ 107, subd. (a)(2)). Under section 107 as interpreted in *American Airlines*, this period can be determined based on expectations of substance, as well as on legal rights. (*American Airlines, supra,* 65 Cal.App.2d at pp. 330–331.)

■ In *American Airlines*, the tenants' "hope or expectation of future use" after the stated terms of their leases was not "capable of private ownership," and hence did not even qualify under section 103 as "property" for tax purposes. (*American Airlines, supra,* 65 Cal.App.3d at p. 332.) Plaintiff submits that the same is true here of any hope or expectation he might have of possession of longer than one month under his lease. However, the tenant's

---

[7] We note that actual possession on the lien date is not an absolute prerequisite for a taxable possessory interest; such an interest can be found if the property is likely to be possessed later in the tax year. (*City of San Jose v. Carlson, supra,* 57 Cal.App.4th at pp. 1351, 1354 [repeat short-term users of city facilities had taxable possessory interests even though most users did not occupy facilities on the lien date]; *Dressler v. County of Alpine* (1976) 64 Cal.App.3d 557, 563–565 [134 Cal.Rptr. 554] [taxpayers had taxable possessory interest in annual grazing permits to be issued after the lien date where they had received such permits for many years].) These cases further refute plaintiff's argument that possessory interest taxes cannot be based on "potential" possession.

pretermination entitlement to continued occupancy under a month-to-month lease is a recognized "property interest." (*People ex rel. Dept. of Transportation v. Lucero, supra,* 114 Cal.App.3d at p. 170.) Moreover, plaintiff is in a very different position than the tenants in *American Airlines.* While it was entirely speculative what would become of the *American Airlines* tenancies after the leases expired in the distant future, plaintiff had a long history of possession under his month-to-month arrangement. Here, value could be ascribed to the expectation of continued possession, whereas in *American Airlines* it could not. (See *Board of Supervisors v. Archer, supra,* 18 Cal.App.3d at p. 724 ["[t]o say that the right to pasture cattle on government land, even though that right is revocable at the government's will and may be required to be exercised with other cattle owners, has no cash value is unbelievable"].)

Plaintiff argues that it was unfair for defendant to tax him as if he had a long-term lease while refusing to provide him with one. However, as plaintiff concedes, defendant is required to tax his possessory interest based on its fair market value. (See fn. 1, *ante.*) Given plaintiff's history of possession, a purchaser of his tenancy would likely anticipate that the tenancy would continue for more than one month, and would likely pay more for it than for a one-month tenancy. Therefore, it would be inconsistent with the fair market value standard to adopt the term of possession plaintiff advocates. Plaintiff argues that application of anticipated terms of possession such as the one here will lead to absurd results, where more value could be placed on month-to-month tenancies than tenancies with longer stated terms. But the valuation in any particular case will depend on the circumstances outlined formerly in rule 23 and currently in rule 21, subdivision (d). For example, considering the history of the parties' relationship, a longer term of possession might be reasonably anticipated under a month-to-month tenancy that had existed for many years than under a one-year tenancy that had never been renewed. We agree with plaintiff that the stated term cannot be ignored, but it will not necessarily be the controlling factor. (See rule 21, subd. (d)(1) [stated term is not the reasonably anticipated term if there is clear and convincing evidence of a different understanding].) Plaintiff observes that different anticipated terms of possession have been applied to his lease at different times, and suggests that any term of possession that is used in his case, other than one month, will be essentially arbitrary. We would grant that appraisal is not an exact science, but a reasonable finding based on relevant considerations and credible evidence is not arbitrary, and whether any particular determination can be sustained is solely a matter of substantial evidence (see *Freeport-McMoran Resource Partners v. County of Lake, supra,* 12 Cal.App.4th at p. 640 [where application of valuation method is challenged, review in trial and appellate court is only for substantial evidence]).

## C. *Substantial Evidence*

Plaintiff maintains that substantial evidence for the assessments was lacking. When the property was assessed for the 1998 and 2001 tax years, plaintiff had been a holdover tenant at the marina for over seven and 10 years, respectively. The history of the property's use (rule 23, subd. (b)(2)) and of the parties' relationship (rule 21, subd. (d)(2)(D)) thus strongly supported the five-year terms of possession used for those tax years. According to the August 29, 2003, reports of defendant's assessor for the AAB appeals on the 1998 and 2001 taxes, neither plaintiff nor the City of Oakland had any present plan to terminate the lease. Thus, the terms of possession were also supported by the policies of the public owner (rule 23, subd. (b)(3); rule 21, subd. (d)(2)(B)) and the practices of the private possessor (rule 23, subd. (b)(4); rule 21, subd. (d)(2)(C)). Accordingly, the 1998 and 2001 assessments were based on substantial evidence.

Virtually all of plaintiff's submission to the AAB consisted of legal arguments, which we have previously addressed, based on the *American Airlines* decision. On the facts, plaintiff argued for a shorter term of possession in view of the "Oakland Estuary Plan" for long-range development of the property and its surroundings. Plaintiff lodged the assessor's November 1998 report for plaintiff's earlier appeal of 1997 taxes, which explained the nature of the estuary plan and its affect on the term of possession as follows:

"The Port of Oakland and The City of Oakland published a draft of the Estuary Plan in February 1998, as of 1-1-97 [there] was no plan available. Katrina Koh of the Community and Economic Development Agency of the City of Oakland says, 'The Oakland Estuary Plan is a vision document only, and is long term in nature because of cost. The Oakland Estuary Plan could also involve public bond measures. There will be a policy plan out in November, included in the policy plan is specific reference to the Subject property. Pictures in the Estuary Plan are for illustrations only, and the estimated implementation guide should be ready 2 months after that. The plan as it is written in any shape or form will not force [plaintiff] to move.' I talked to Rick Wederhorn the planning Manager for the Port of Oakland he said, 'his long range recommendation is to leave [plaintiff] alone.'

". . . I am . . . estimating the anticipated term of possession to be 8 years. . . . [¶] . . . [¶]

"The Attorney for the applicant contends that the Assessor should use an anticipated term of possession of 5 years to value the subject property. In the original assessment the assessor used a 14 year term of anticipated possession. This was based on a study of like properties that were being leased from

government agencies, this study indicated that the average term of possession was 14 years. The port has stated their willingness for the applicant to stay at the current location where he has been since 1967. The attorney has stated the willingness of his client [plaintiff] to stay at the current location. The Estuary Plan is [a] long term vision document that could involve bond measures. All these indicators point to the fact that [plaintiff] will be at the property for the long term. . . ."

The estuary plan situation was updated in the assessor's reports for 1998 and 2001 as follows:

"No information supporting the applicant's value has been provided to the assessor since the 1997 appeal. In determining a reasonably anticipated term of possession for the 1998 appeal, term issues raised by the applicant for the 1997 appeal and actions taken by the Board were examined. The 8-year term set by the Board for the 1997 appeal sets an upper limit on the term to be used.

"Two primary issues were raised by the applicant; the impact that the draft 'Oakland Estuary Plan' would have on his ability to remain at the marina site and the Port of Oakland's refusal to extend his lease beyond a month-to-month term. A draft of the 'Oakland Estuary Plan' prepared for the Port of Oakland and the City of Oakland was published in February 1998 and became a part of the City of Oakland's General Plan in 1999. The applicant contends that implementation of the 'Oakland Estuary Plan' will force him to vacate the subject property with only one month[']s notice since he has a month-to-month lease. The estuary plan was in its draft form and it has been [five years from 1998, two years from 2001] since the applicant filed this appeal and he still has possession of the subject property.

"In a conversation with Mr. Rick Wederhorn, the Strategic Policy and Planning Manager for the Port of Oakland, he said that the 'Oakland Estuary Plan' is a visionary document used for long range planning in the development of the Oakland Estuary. He stated that negotiations are presently in progress for the development of the 9th Avenue terminal area on land owned by the port and that the 5th Avenue area would be the last to be developed because it involved privately owned land and remediation issues. He said that even short-term projects involving the estuary plan usually take 5 to 7 years to implement and that he knew of no plans at this time to terminate the lease with [plaintiff] for the marina property.

"After talking to Mr. Wederhorn regarding the long-term plans and the current state of development for the Oakland Estuary it appears that a more appropriate reasonably anticipated term of possession would be 5 years. [Plaintiff] has continued to occupy the subject premises for 5 years since his appeal of the 1998 value and apparently has no plans to move. . . ."

The record thus establishes that the estuary plan was considered in fixing the anticipated terms of possession for 1998 and 2001, and that the plan's existence caused those terms to be shortened to plaintiff's benefit. The evidence did not as a matter of law compel terms of possession shorter than five years; the AAB could credit the port manager's representations that plaintiff's 5th Avenue property would be the last one developed, and that even short-term projects under the plan generally took five to seven years to implement.[8] Plaintiff notes that property is to be assessed based on the facts existing on the lien date, and that subsequent events should not factor into the analysis. (See *Fujitsu Microelectronics, Inc. v. Assessment Appeals Bd.* (1997) 55 Cal.App.4th 1120, 1125 [64 Cal.Rptr.2d 465].) However, while the assessor's reports referred to plaintiff's continued possession after the lien date,[9] most of the discussion of post-lien-date developments concerned the estuary plan, and plaintiff was helped, not hurt, by consideration of those facts because they led to shortening of the terms of possession originally specified.

The assessor's September 2, 2003 report for the 2002 tax year discussed further developments that supported the even shorter term of possession (three years rather than five) anticipated in 2002. The report for 2002 attached an Alameda Times-Star article, and fairly described the article as one that reported on "current developmental plans for the area surrounding the subject property that includes a sale to private developers and provides some of the problems related to going forward with this development. The Port of Oakland is scheduled to vote on an agreement on [September 2, 2003,] to pave the way for the sale of property owned by the port. However, the deal cannot be finalized until the port works out a plan to overcome legal restrictions on the waterfront property. The article also states that it will take years to get the job done." The assessor's report found that three years was a reasonable term of possession, "[b]ased on the uncertainty and risk at this time." At the September 3, 2003 AAB hearing on plaintiff's appeals, the assessor confirmed that the Port of Oakland had, the day before, approved the sale of the

---

[8] Credible hearsay evidence could be considered in the AAB proceeding. (Cal. Code Regs., tit. 18, § 313, subd. (e) [hearings "need not be conducted according to technical rules relating to evidence and witnesses"].)

[9] It is difficult to turn an entirely blind eye to the fact that, by the time of oral argument in this appeal, plaintiff had possessed the property for the full anticipated terms he is calling arbitrary and unreasonable.

subject property to a private developer. However, the assessor reiterated that no development was imminent, and continued to recommend that a three-year term of possession be applied.

The three-year term of possession for the 2002 tax year was supported by the same substantial evidence that supported the five-year terms for 1998 and 2001: plaintiff's long history of possession of the site, and the lack of any present intention of either party to terminate the lease. It appears that the three-year term was predicated in part on the assessor's review of ongoing developments affecting the property's future, but, again, plaintiff was not prejudiced by any improper consideration of those post-lien events because they worked in his favor.

D. *Administrative Findings*

Plaintiff contends that the AAB's findings were inadequate. As relevant here, the AAB found simply that the fair market values of plaintiff's possessory interest for the years in question were "the Assessor's recommended values." Plaintiff argues that this finding was inadequate under an SBE rule requiring that the decision "fairly disclose the board's findings on all material points raised in the application and at the hearing." (Cal. Code Regs., tit. 18, § 324, subd. (e).)

As we have observed, plaintiff's case before the AAB consisted mostly of legal arguments from the *American Airlines* case. Those arguments were for a court, not the AAB, to resolve. The assessor's determinations were consistent with former rule 23 and current rule 21, subdivision (d). Thus, plaintiff's position was in essence that those rules were invalid as applied here. However, the AAB was required to follow the SBE rules unless and until a court invalidated them. Consequently, the AAB was not required to respond to plaintiff's legal arguments.

As for the facts, the AAB evidently accepted the assessor's methodology and evidence, which were spelled out at length in the record. Under the circumstances, more detailed findings were not required.

## III. CONCLUSION

The judgment is affirmed.

Stein, J., and Swager, J., concurred.