[No. B226390. Second Dist., Div. Six. Aug. 30, 2011.]

CHARTER COMMUNICATIONS PROPERTIES, LLC, Plaintiff and
Appellant, v.
COUNTY OF SAN LUIS OBISPO, Defendant and Respondent.

COUNSEL

Pillsbury Winthrop Shaw Pittman, Lawrence L. Hoenig and Richard E. Nielsen for Plaintiff and Appellant.

Coblentz, Patch, Duffy & Bass, Richard R. Patch, Jeffrey Sinsheimer, Charmain G. Yu; Sutherland Asbill & Brennan and Douglas Mo for Time Warner Cable Inc., Cox Communications, Inc., Comcast Corporation, California Cable and Telecommunications Association and California Taxpayers Association as Amici Curiae on behalf of Plaintiff and Appellant.

Warren R. Jensen, County Counsel, and Ann Duggan, Chief Deputy County Counsel, for Defendant and Respondent.

Andrea Sheridan Ordin, County Counsel (Los Angeles) and Albert Ramseyer, Principal Deputy County Counsel, for California Assessors' Association as Amicus Curiae on behalf of Defendant and Respondent.

OPINION

**COFFEE, J.**—It is the duty of a county tax assessor to value property at its fair market value. To arrive at the fair market value of a television cable franchise, the assessor must determine its reasonably anticipated term. Section 21, subdivision (d)(1) of title 18 of the California Code of Regulations provides for situations, as here, where the reasonably anticipated term of possession is longer than the stated term of possession.[1]

Appellant Charter Communications Properties, LLC (Charter), contends that the assessor violated Rule 21 when it valued Charter's unexpired cable franchises.[2] Charter challenges the use of a reasonably anticipated term of possession longer than the remaining years of the stated term of each franchise agreement. Charter further challenges the use of Rule 21, subdivision (d)(2) factors to value the unexpired franchises. In this case, the San Luis Obispo County Assessment Appeals Board (AAB), in compliance with Rule 21, found clear and convincing evidence of a mutual understanding between the County of San Luis Obispo (County) and the owner of franchises that the reasonably anticipated terms of possession of the franchises were longer than their stated terms of possession. Accordingly we affirm the judgment of the trial court which so found.

---

[1] All further references to "Rule 21" are to section 21 of this code and title.

[2] The county assessor also valued Charter's expired franchises. Charter does not challenge those valuations.

## BACKGROUND

The subject property consists of Charter's eight unexpired television franchise possessory interests in the County. The County and several cities (Atascadero, Paso Robles, Grover Beach, San Luis Obispo, Pismo Beach, Arroyo Grande, and Morro Bay) entered into franchise agreements with Charter. At the time of the challenged assessments, between four and 10 years remained of the unexpired franchise agreements' stated terms. Charter filed applications seeking $594,918 of property tax refunds for 2000 through 2005. The applications challenged two factors applied by the assessor in valuing the franchise possessory interests: the term of possession and the economic rent. This appeal does not concern the economic rent factor.

### AAB Proceedings

On April 16, 2004, the assessor and Charter appeared at the AAB hearing concerning Charter's 2000 through 2003 property tax refund applications. During that session, the AAB decided to seek an advisory opinion from the legal staff of the state's Board of Equalization (SBE), and continued the proceeding. The SBE issued an advisory opinion letter on July 13, 2005. Meanwhile, Charter had filed comparable refund applications for 2004 and 2005. On April 21, 2006, the AAB consolidated Charter's refund applications for 2000 through 2005 and resumed hearing Charter's applications.

The assessor and Charter agreed that the market value of the subject property should be determined by the capitalization of income approach, using the following factors: (1) growth rate (6 percent); (2) expense ratio; (3) economic rent percentage; (4) term of possession (number of years) used for valuation purposes; and (5) capitalization rate (12 percent). They also agreed as to the formula to be used to calculate the market value using those factors, and they agreed that the correct assessed value for each parcel would be the lesser of (1) market value computed according to the agreed-upon manner or (2) the adjusted base year value of record.

Both parties presented evidence and arguments relating to the appropriate term of possession. Most of their arguments concerned subdivision (d)(1) of Rule 21, which provides as follows: "The term of possession for valuation purposes shall be the reasonably anticipated term of possession. The stated term of possession shall be deemed the reasonably anticipated term of possession unless it is demonstrated by clear and convincing evidence that the public owner and the private possessor have reached a mutual understanding or agreement, whether or not in writing, such that the reasonably anticipated term of possession is shorter or longer than the stated term of

possession. If so demonstrated, the term of possession shall be the stated term of possession as modified by the terms of the mutual understanding or agreement."

*Assessor*

Charron Sparks, a supervising assessor, presented the assessor's staff report. Sparks explained that "[t]he Federal Communications Act of 1936 specifically provides that the continuation of service is in the public's best interest and makes it essentially impossible for a franchise not to be renewed. [¶] The assessor is not aware of any franchise agreement throughout the state that has not been renewed."

Sparks gathered information from each of the franchising agencies in the County. She found that the renewal process was not contentious and "that franchise agreements are renewed indefinitely." Sparks testified about the perception of local franchise agencies from whom she collected data. Those agencies were not at all "concerned about their franchise agreements." As an example, she explained that the County franchise "was in limbo for three years [and] nobody really wanted to deal with it because it's a non-issue as far as they are concerned. It is just going to be what it is because they can't tell them not to be [t]here. They can[not not] renew it. There is no option to not renew it. [Charter is] the only game in town. They are the only people with cable on the ground."

The assessor's staff report includes an excerpt from the "Form 10-K" that Charter filed with the Securities and Exchange Commission for the year ended December 31, 2002. Relevant portions of that excerpt follow: "Franchise rights acquired through the purchase of cable systems represent management's estimate of fair value at the date of acquisition and generally are reviewed to determine if the franchise has a finite life or an indefinite life as defined by Statement of Financial Accounting Standards (SFAS) No. 142 . . . which eliminates the amortization of . . . indefinite lived intangible assets. . . . [B]eginning January 1, 2002, all franchises that qualify for indefinite life treatment under SFAS No. 142 are no longer amortized against earnings . . . . [¶] . . . [¶] The Company believes that facts and circumstances have changed to enable it to conclude that substantially all of its franchises will be renewed indefinitely, with those franchises where technological or operational factors limit their lives continuing to be amortized. The Company has sufficiently upgraded the technological state of its cable systems and now *has sufficient experience with the local franchise authorities where it acquired franchises to conclude substantially all franchises will be renewed indefinitely.*" (Italics added.) Sparks also testified that Charter had expended almost $50 million in making technological upgrades to the subject property.

Based on the just described factors, the assessor concluded that there was clear and convincing evidence that Charter and the franchise authorities mutually understood that the unexpired franchise terms were longer than the agreements' stated terms, and it was not required to use the remaining years of the original stated term as the term of possession. Since the parties mutually understood that the terms were indefinite, it was necessary to determine a reasonably anticipated term of possession, as in the case of an expired agreement.[3]

Sparks then addressed the basis for the 15-year term that the assessor determined to be the reasonably anticipated term of possession of the indefinite, unexpired franchises. She referred to the following statements that Charter made in its Form 10-K: "Prior to the adoption of SFAS No. 142, costs incurred in obtaining and renewing cable franchises were deferred and amortized using the straight-line method over a period of 15 years. Franchise rights acquired through the purchase of cable systems were generally amortized using the straight-line method over a period of 15 years. The period of 15 years was management's best estimate of the useful lives of the franchises and assumed that substantially all of those franchises that expired during the period would be renewed but not indefinitely." Sparks further noted that most franchise agreements had 15-year terms.

### Charter

Charter's representatives presented its case. Citing Rule 21, subdivision (d)(1), and other authority, Charter argued that because the franchise agreements for the subject property were unexpired as of the valuation date, the term of possession was the number of years remaining under the stated term of each agreement.

In disputing that there was any mutual understanding that the unexpired franchises had indefinite terms, Charter presented the testimony of Ed Merrill, its Northern California representative. Merrill testified about two instances in which franchises briefly expired and the parties mutually agreed to short extension periods for further negotiations. He noted one situation where a city—Santa Cruz—initially refused to transfer a franchise from Charter to another company. Merrill also testified that Charter had identified several

---

[3] Where there is no stated term of possession, the assessor may determine the reasonably anticipated term of possession based upon the intent of the parties, or the intent of similarly situated parties, using criteria such as the sale price of the taxable possessory interest and prices of comparable interests; the history of such parties' relationships; their actions; and other criteria listed in Rule 21, subdivision (d)(2). (See also Rule 21, subd. (d)(3) [taxable possessory interest of unspecified duration is deemed to be a taxable possessory interest with no stated term of possession].)

franchises that it did not intend to renew. During cross-examination, Merrill conceded that he could not cite "any franchise agreements in . . . California that eventually have not been renewed where service actually ceased and then a new cable provider came in . . . ."

Charter also presented documentary evidence, including appraisals, calculations, and the SBE July 13, 2005 advisory opinion letter (SBE letter). One Charter exhibit showed that the remaining years of the unexpired franchise were as follows: Arroyo Grande, eight years; Atascadero, 10 years; Grover Beach, seven years; Morrow Bay, seven years; Paso Robles, four years; Pismo Beach, seven years; City of San Luis Obispo, four years; San Luis Obispo County, 10 years.

Charter asserted that the SBE letter supported its position. Relevant portions of that letter follow: "Rule 21(d) separates taxable possessory interests into two types: those with or those without a stated term .of possession. . . . [¶] When a taxable possessory interest has a stated term of possession, rule 21 provides that the stated term of possession shall be the reasonably anticipated term of possession, unless the assessor can demonstrate by 'clear and convincing evidence' that the public owner and the private possessor have reached a mutual understanding or agreement such that the reasonably anticipated term of possession differs from the stated term of possession. If so demonstrated, the rule also provides that the term of possession for valuation purposes shall be the stated term of possession as modified by the mutual understanding or agreement. . . . [¶] *For a taxable possessory interest without a stated term of possession, the assessor may determine the reasonably anticipated term of possession based upon the intent of the public owner and the private possessor, or by the intent of similarly situated parties, using criteria such as that listed in rule 21(d)(2)(A–E).* Rule 21(d)(3) states that *a taxable possessory interest that runs from month to month, an interest without a fixed term, or an interest of otherwise unspecified duration shall be deemed to be a taxable possessory interest with no stated term of possession.* [¶] If a cable system franchise is operating under a current document . . . , the presumption is that the stated term of possession, . . . remaining . . . thereunder on the valuation date, constitutes the reasonably anticipated term of possession. If the document or instrument has expired, the reasonably anticipated term of possession is to be determined . . . using the criteria listed in Rule 21(d)(2)(A–E) until . . . a new document or instrument is executed." (Italics added.)

In essence, Charter argued that the remaining years of the stated term constitute the reasonably anticipated term unless there is clear and convincing evidence that the parties agreed or mutually understood that another finite stated term would apply to the franchise. The assessor maintained that where

the parties mutually understood that an unexpired agreement had an indefinite term, a reasonable construction of Rule 21 authorized the use of factors relevant to the valuation of agreements with no stated term. (See Rule 21, subd. (d)(2).)

*AAB Findings of Fact*

On September 22, 2006, the AAB issued findings of fact. Its findings include an example of the method for calculating the value of possessory interests under the capitalization of income approach. Its example is based on the following "Assumptions":

"Franchise payment in 2001 = $100,000

"Franchise rate = 5%

"Economic Rent Percentage = 10%

"Growth Rate = 6%

"Expense Ratio = 2%

"Term = 5 years

"Capitalization Rate = 12%"

This example illustrates the significance of the term of possession in assessing value:

"Step 1: Prior Annual System Revenue = $100,000 / 5% = $2,000,000

"Economic Rent for Prior Year = $2,000,000 X 10% = $200,000

"Step 2: Future Gross rent amounts

"For 2002: $200,000 X 1.06 = $212,000

"For 2003: $212,000 X 1.06 = $224,720

"Etc. through the end of the term [(showing results of $238,203.20 (2004); $252,495.39 (2005); and $267,645.11 (2006))]"

"Step 3: Reduce Net Income by deducting 2% Expenses.

"Step 4: Reduce the future Net Annual Rent amounts to present value using the 12% capitalization rate.

"Step 5: The sum of the present values for each year equals the taxable value. The value of the possessory interest in AAB's example findings was $678,768.96."

Relevant portions of the AAB's findings regarding the term of possession for unexpired franchises state: "(1) As to the unexpired franchises, the Board found that the parties agreed to the applicability of Property Tax Rule 21(d)(1) but differed primarily on whether or not the Assessor presented clear and convincing evidence to rebut the use of the stated remaining term as the 'reasonably anticipated term.' [¶] i. [T]he Assessor did present clear and convincing evidence that the Applicant's franchises were of an indefinite duration. [¶] ii. . . . Rule 21(d)(1) refers to a 'mutual *understanding or agreement*, whether or not in writing.' The use of 'or' in this phrase suggests strongly that an 'understanding' is something other than an express 'agreement.' [A]n 'understanding' contrary to the stated remaining term was clearly and convincingly shown by the strong statement in [Charter's] Form 10-K . . . [and] given the serious nature of the statements appearing in a Form 10-K, and the potential civil and criminal consequences of erroneous or misleading statements in a Form 10-K, a responsible corporation would not make such statements unless there was an 'understanding' by both [Charter] and the public owners of the existing franchises. [¶] iii. Having found that the Assessor rebutted the stated remaining term by clear and convincing evidence, the remaining question was what term was shown by clear and convincing evidence. [¶] iv. . . . [T]he originally negotiated length of the franchise was the reasonably anticipated term. For example, if any unexpired franchise had an original term of 15 years, and the express terms of the franchise provided for expiration in 3 years, . . . the 3 year remaining term was rebutted by the clear and convincing evidence the Assessor introduced to show that the franchise was of an indefinite duration and that the reasonably anticipated term was the term originally stated in franchise."

*Trial Court Action*

On January 24, 2007, Charter filed its complaint for refund of property tax in the trial court. Its complaint sought $594,918 of property tax refunds for 2000 through 2005, and challenged two of the five factors used to assess the value of its unexpired franchise agreements: the term of possession and the economic rent.

For the most part, Charter and the County relied upon the record before the AAB. Charter also asked the trial court to take judicial notice of documents

relating to the California Assessors' Association (CAA) 2007 request to the SBE to amend Rule 21. The court granted its request. The parties disputed whether the evidence supported the AAB's finding that clear and convincing evidence established that Charter and the local franchise authorities had any mutual understanding that the term of the unexpired franchises would be longer or shorter than the stated terms of the underlying agreements. Both parties submitted trial briefs with arguments much like those they presented to the AAB.

Charter stressed the following statements that chief deputy county counsel R. Wyatt Cash made at the AAB hearing: "If I understand the Assessor's position on term of possession, I'm not sure that it complies with the [SBE] letter and Rule 21. [¶] . . . [¶] I think more importantly it's in violation of D-1, because to be able to jump to 15 [years] if let's say the stated term in the existing contract is five years left to be able to jump to 15, the Assessor's got to show by clear and convincing evidence that there is a mutual understanding between the franchising agency and the cable company that that term is different, is going to be 15. And that's got to be shown by clear and convincing evidence. [¶] . . . [¶] I think the Assessor can get to 15 years where there is an existing and in place contract. But they have to show by clear and convincing evidence that the parties have a mutual understanding that it will go to 15 years."

Charter stressed also that the SBE had denied the CAA's requests to modify Rule 21. It claimed that such denials supported Charter's position that the stated term of possession must be used to value its unexpired franchises.

After reviewing the trial briefs and hearing oral argument, the trial court commented on several issues. Some of its comments concerning the term of possession follow. "THE COURT: The problem I'm having . . . [¶] . . . Charter is going in to have these revolving franchises. Let's say you're in the 14th year of a 15-year franchise. . . . Is it really an expectation of the parties that that lease is not going to be renewed for a full 15-year period and Charter is saying yes [to the county assessor]. But then in its 10K it's saying, hey, . . . it's likely that these are going to go on indefinitely. [¶] [Charter's] point is, well, it's not a mutual understanding. . . . My point is, well it's better than a mutual understanding. It's an admission from a party opponent essentially that whatever they're telling the county, they have a different view of the thing and they, themselves, think it's going to go on indefinitely."

On June 2, 2010, the trial court issued its amended ruling following trial.[4] It upheld the AAB's findings and decision concerning the term of possession

---

[4] At the request of all parties, the court amended the caption. The substance of its ruling did not change.

that applied in valuing Charter's unexpired franchise possessory interests. It ruled that substantial evidence did not support the AAB's finding that the economic rent rate was 10 percent, and remanded that issue to AAB for further consideration.

## DISCUSSION

Charter contends that the County improperly valued its possessory interests in the unexpired franchises by using a term of possession that exceeded the remaining years of the stated term of each franchise agreement. We disagree.

### *Legal Background*

■ Under California Constitution, article XIII, section 1, subdivision (a), property is generally to be assessed as a percentage of its fair market value. Revenue and Taxation Code section 401 provides that "Every assessor shall assess all property subject to general property taxation at its full value." Revenue and Taxation Code section 110, subdivision (a), provides in relevant part that " 'full cash value' or 'fair market value' means the amount of cash or its equivalent that property would bring if exposed for sale in the open market . . . ." ■ Private uses of public property may be taxed if those uses constitute possessory interests. (Cal. Const., art. XIII, § 1; Rev. & Tax. Code, §§ 104, 107, 201; see also *Silveira v. County of Alameda* (2006) 139 Cal.App.4th 989, 1003 [43 Cal.Rptr.3d 501].)

Revenue and Taxation Code section 107.7, which governs the assessment of cable television possessory interests, provides as follows in relevant part: "(a) When valuing possessory interests in real property created by the right to place wires, conduits, and appurtenances along or across public streets, rights-of-way, or public easements contained in . . . a cable franchise . . . (a 'cable possessory interest'), the assessor shall value these possessory interests consistent with the requirements of Section 401 [at full market value]. The methods of valuation shall include, but not be limited to, the comparable sales method, the income method (including, but not limited to, capitalizing rent), or the cost method. [¶] (b)(1) The preferred method of valuation of a cable television possessory interest or video service possessory interest by the assessor is capitalizing the annual rent, using an appropriate capitalization rate. [¶] (2) For purposes of this section, the annual rent shall be that portion of that franchise fee received that is determined to be payment for the cable possessory interest . . . for the actual remaining term or the reasonably anticipated term of the franchise . . . or the appropriate economic rent. . . ."

■ "The term of possession is a significant variable in possessory interest valuation, and the assessor reviews it on each lien, or valuation, date." (SBE

Issue Paper No. 01-018 R (Oct. 5, 2001) <http://www.boe.ca.gov/proptaxes/ pdf/01-018R.pdf> [as of Aug. 30, 2011] (SBE Issue No. 01-018 R).) As the trial court observed, "[t]he greater [the] number of years in a term of possession, the greater the present value; fewer years result[] in a lower present value."

Acting pursuant to Government Code section 15606, the SBE has adopted and amended comprehensive rules relating to the valuation of possessory interests. In 2002, it revised those rules and incorporated them into Rule 21. Subdivision (d)(1) of Rule 21 provides that "[t]he stated term of possession shall be deemed the reasonably anticipated term of possession unless it is demonstrated by clear and convincing evidence that the public owner and the private possessor have reached a mutual understanding or agreement, whether or not in writing, such that the reasonably anticipated term of possession is shorter or longer than the stated term of possession. If so demonstrated, the term of possession shall be the stated term of possession as modified by the terms of the mutual understanding or agreement."

Before the SBE adopted Rule 21, its staff presented a report regarding the language it recommended, including that now found in Rule 21, subdivision (d)(1). The staff explained that the subdivision (d)(1) language was predicated upon *American Airlines, Inc. v. County of Los Angeles* (1976) 65 Cal.App.3d 325, 328–333 [135 Cal.Rptr. 261], which "held that in order to depart from the stated term of possession, the assessor must show an 'understanding' or 'expectation' between the possessor and the public owner—based on statute, contract, or evidence of 'real substance'—that the reasonably anticipated term of possession differs from the stated term of possession." (SBE Issue No. 01-018 R, *supra*, § V.) The SBE staff further explained that the "use of a clear and convincing standard for departing from the stated term of possession [in the rule was] consistent with California Civil Code standards for demonstrating that a written agreement has been modified." (*Ibid.*) The staff also clarified that the Civil Code "set[] a higher standard than staff's language" and that the proposed rule encompasses "merely an 'understanding,' " as well as an actual agreement such as that contemplated by Civil Code section 1698. (SBE Issue No. 01-018 R, § V.) The SBE adopted the language its staff recommended in Rule 21.

### Standard of Review

The parties dispute whether this court should employ a de novo or a substantial evidence standard of review in this case. Charter views this as a case for de novo review, characterizing the issue as a question of law involving the meaning of Rule 21, and one involving the valuation method used by the County and the AAB. The County argues that the issues involve factual determinations that we review under the substantial evidence standard.

"Where a taxpayer challenges the validity of the valuation method used by an assessor, the trial court must determine as a matter of law 'whether the challenged method of valuation is arbitrary, in excess of discretion, or in violation of the standards prescribed by law.' [Citation.] Our review of such a question is de novo. [Citation.] By contrast, where the taxpayer challenges the application of a valid valuation method, the trial court must review the record presented to the Board to determine whether the Board's findings are supported by substantial evidence but may not independently weigh the evidence. [Citations.] This court, too, reviews a challenge to application of a valuation method under the substantial evidence rule. [Citation.] [¶] . . . [¶] The determination whether a challenge is to 'method' or 'application' is not always easy." (*Freeport-McMoran Resource Partners v. County of Lake* (1993) 12 Cal.App.4th 634, 640 [16 Cal.Rptr.2d 428] (*Freeport-McMoran*).) The trial court applied the substantial evidence standard in reviewing the term of possession issue after concluding that the parties agreed upon the method for determining the reasonably anticipated term of possession—pursuant to Rule 21, subdivision (d)(1)—"i.e. whether clear and convincing evidence supports the decision to use a term of possession that is different from the stated term[s] of possession[] in the franchise agreements" and that their dispute involved the assessor's application of the evidence to that methodology. We conclude that Charter's challenge to the trial court's ruling upholding the AAB findings involves mixed questions of law and fact.

*Substantial Evidence Supports the Trial Court's Conclusion That the AAB Correctly Found There Was Clear and Convincing Evidence That Charter and the Local Franchising Authorities Mutually Understood That the Franchises Had Indefinite Terms*

Charter and the County concurred that Rule 21, subdivision (d) required that the reasonably anticipated term of possession be deemed to be the stated term, unless there was clear and convincing evidence that the parties agreed that the term would be shorter or longer than the stated term. We thus apply the substantial evidence standard to review Charter's claim that there was not such evidence. (*Freeport-McMoran, supra*, 12 Cal.App.4th at pp. 640–641.)

Charter asserts that there was not clear and convincing evidence that the parties mutually understood that the stated terms of the unexpired franchises were indefinite. It argues, as it did below, that the assessor only presented Charter's unilateral understanding regarding the indefinite terms of the franchises. We disagree.

Charter argues that the assessor "did not offer any testimony or documentary evidence from the respective public franchisor cities and county regarding the existence of any mutual understanding." That argument ignores or

discounts the assessor's evidence regarding local franchise authorities' understanding that the franchises would be renewed indefinitely, which it presented through Sparks's testimony describing her communications with them. The AAB was entitled to consider credible hearsay evidence. (Cal. Code Regs., tit. 18, § 313, subd. (e) [hearings "need not be conducted according to technical rules relating to evidence and witnesses"].) Further, Charter's Form 10-K statements *reflect* the local agencies' understanding that the franchises had indefinite terms: "[Charter] has sufficiently upgraded the technological state of its cable systems and now *has sufficient experience with the local franchise authorities where it acquired franchises to conclude substantially all franchises will be renewed indefinitely*." (Italics added.) If the local franchise agencies did not share that understanding, Charter could not have responsibly made that statement in its Form 10-K. Clear and convincing evidence supports the AAB finding that the parties mutually understood the terms of the unexpired franchises were indefinite.

> *The AAB Did Not Exceed Its Discretion or Violate the Standards Prescribed by Law by Approving a Term of Possession That Complied with the Constitutional and Statutory Mandate That Property Be Assessed at Fair Market Value*

Charter also challenges the trial court's approval of the AAB finding regarding the reasonably anticipated term of possession that applied to the unexpired franchises of indefinite terms. The AAB found that the remaining term was rebutted by the clear and convincing evidence the assessor introduced to show that the franchise was of an indefinite duration and that the reasonably anticipated term was the term originally stated in the franchise. We review this issue on a de novo basis to determine as a matter of law whether the challenged method of valuation is arbitrary, in excess of discretion, or in violation of the standards prescribed by law. (*Freeport-McMoran, supra,* 12 Cal.App.4th at pp. 640–641.)

Charter contends that the remaining years of the stated term in the agreement must be deemed to be the reasonably anticipated term of possession, unless the assessor presents clear and convincing evidence of the parties' mutual understanding regarding a specific definite term to use in lieu of the originally stated term, pursuant to the terms of Rule 21, subdivision (d)(1). Charter cites the following language of Rule 21, subdivision (d)(1), with emphasis on the italicized portion: "The stated term of possession shall be deemed the reasonably anticipated term of possession unless it is demonstrated by clear and convincing evidence that [the parties] have reached a mutual understanding or agreement . . . that the reasonably anticipated term of possession is shorter or longer than the stated term of possession. *If so demonstrated, the term of possession shall be the stated term*

*of possession as modified by the terms of the mutual understanding or agreement.*" (Italics added.) In so arguing, Charter also relies upon *American Airlines*, the SBE's statements in SBE Issue No. 01-018 R, other SBE publications and SBE's denial of CAA's requests that SBE revise Rule 21.

Taken to its logical conclusion, Charter's argument would prohibit the assessor from complying with its duty of assessing the unexpired franchises at fair market value. The trial court's comments reflect that flaw: "So you've got a 15-year lease that expires next year. You've got one year left. [¶] You're telling me that notwithstanding what Charter is telling the world [(that the franchise terms are indefinite)] that the county has to say, well, it might not be renewed next year. We're going to [assess] it for one year this year. [¶] It doesn't pass the smell test in terms of what is real. It doesn't seem real or fair or anything else."

Charter makes the related claim that the trial court apparently "mistakenly relied upon various factors enumerated under Rule 21, subdivision (d)(2) for franchises with unstated terms of possession." In essence, Charter thus argues that the factors described in subdivision (d)(2) can never be considered in valuing an unexpired franchise that started with a stated term, even where there is clear and convincing evidence that the parties mutually understand that the franchise has an indefinite term. We disagree.

■ Constitutional, statutory and regulatory law require the assessor to assess property at full market value. (Cal. Const., art. XIII, § 1; Rev. & Tax. Code, §§ 401, 107.7, subd. (a), 104, 107, 201; Rule 21, subds. (b) & (c).) Rule 21, subdivision (d)(1), does not address the valuation of unexpired franchises with indefinite terms, such as those at issue here. Other provisions of Rule 21 provide guidance for valuing franchises with indefinite terms.

For example, Rule 21, subdivision (d)(3) provides that "[f]or the purposes of this regulation, *a taxable possessory interest that runs from month to month, a taxable possessory interest without fixed term, or a taxable possessory interest of otherwise unspecified duration shall be deemed to be a taxable possessory interest with no stated term of possession.*" (Italics added.) Once the parties mutually understood that a franchise had an indefinite term, it was equivalent to a possessory interest of "otherwise unspecified duration." (*Ibid.*) As such, subdivision (d)(3) requires that it be valued as "a taxable possessory interest with no stated term of possession." Rule 21, subdivision (d)(2) which governs such a valuation, provides as follows: "If there is no stated term of possession, the reasonably anticipated term of possession shall be demonstrated by the intent of the public owner and the private possessor, and by the intent of similarly situated parties, using criteria such as the following: [¶] (A) The sale price of the subject taxable possessory interest and sales prices of comparable

taxable possessory interests. [¶] (B) The rules, policies, and customs of the public owner and of similarly situated public owners. [¶] (C) The customs and practices of the private possessor and of similarly situated private possessors. [¶] (D) The history of the relationship of the public owner and the private possessor and the histories of the relationships of similarly situated public owners and private possessors. [¶] (E) The actions of the parties to the subject taxable possessory interest, including any amounts invested in improvements by the public owner or the private possessor."

■ The criteria cited by the assessor, as well as those cited by the AAB, to determine the reasonably anticipated term of the unexpired franchises, fall with the criteria of Rule 21, subdivision (d)(2). Findings made based upon those criteria must be proved by a preponderance of the evidence. (The AAB's finding regarding that term suggests it used a higher standard of proof.) We conclude that the preponderance of the evidence established that the originally negotiated term of each franchise was the reasonably anticipated term of such unexpired franchise.

Charter also argues that the SBE's denial of the CAA's requests to provide a definition of mutual understanding "is telling as to the lack of merit of the County's and trial court's reliance on evidence not meeting the mutuality requirement." It is not. As the trial court noted, the SBE declined the CAA's most recent request on the "grounds it needs more information in order to determine if modification of Rule 21 is justified."

■ Charter argues at length that this case is comparable to *American Airlines*, where the court concluded that the assessor erred by failing to assess the airlines' leasehold interest in an airport based on a 25-year term of possession rather than the remaining 18-year terms of the lease. *American Airlines* is inapposite. Multiple airlines were competing for the airport leases, in contrast to Charter's virtual monopoly as the sole provider of cable services in the County. Moreover, in stark contrast to Charter's public announcement that the franchises were indefinite, and other evidence reflecting the parties' mutual understanding to that effect, the record in *American Airlines* lacked any evidence that the leases would be extended beyond their stated terms. The AAB did not abuse its discretion in applying the Rule 21, subdivision (d)(2) factors to determine the reasonably anticipated terms of possession of the unexpired leases of indefinite duration. The trial court correctly upheld the AAB's findings.

## DISPOSITION

The judgment is affirmed. Costs to respondent.

Gilbert, P. J., and Perren, J., concurred.

A petition for a rehearing was denied September 28, 2011.