Filed 12/14/18 (unmodified opinion attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| NEXT CENTURY ASSOCIATES, LLC, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> COUNTY OF LOS ANGELES, <br><br> Defendant and Respondent. | B284092 <br><br> (Super. Ct. L.A. County No. BC569076) <br><br><br> <u>ORDER MODIFYING OPINION</u> |

THE COURT*:

It is ordered that the opinion, filed herein on , 2017, be modified as follows:

Delete the first two paragraphs on page 13, under Discussion section A and replace with:

" 'Where a taxpayer challenges the validity of the valuation method used by an assessor, the trial court must determine as a matter of law 'whether the challenged method of valuation is arbitrary, in excess of discretion, or in violation of the standards prescribed by law.' [Citation.] Our review of such a question is de novo.' " (*Charter Communications Properties, LLC v. County of San Luis Obispo* (2011) 198 Cal.App.4th 1089, 1101 (*Charter Communications*).) Here, as noted above, both Next Century and the Assessor used similar DCF analyses, and no one challenges that method of valuation. It is expressly permitted by regulation. (Cal. Code Regs., tit. 18, §§ 2, subd. (b), 3, subd. (e), 8.)

But where, as here, " 'the taxpayer challenges the *application* of a valid valuation method, the trial court must review the record presented to the Board to determine whether the Board's findings are supported by substantial evidence but may not independently weigh the evidence. [Citations.] This court . . . reviews a challenge to application of a valuation method under the substantial evidence rule.' " (*Charter Communications, supra*, 198 Cal.App.4th at p. 1101.) Other factual determinations by the Board also are reviewed under the substantial evidence standard. (*Farr v. County of Nevada* (2010) 187 Cal.App.4th 669, 679−680 (*Farr*).)

There is no change in the judgment.

_____

_____  _____
*ROTHSCHILD, P. J.          BENDIX, J.      CURREY, J.**


** Judge of the Los Angeles Superior Court assigned by the Chief
Justice pursuant to article VI, section 6 of the California Constitution.

Filed 11/1/18; pub. order 11/30/18 (see end of opn.) (unmodified opinion)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| NEXT CENTURY ASSOCIATES, LLC, | B284092 |
| Plaintiff and Appellant, | (Los Angeles Super. Ct. No. BC569076) |
| v. | |
| COUNTY OF LOS ANGELES, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles, Robert L. Hess, Judge.  Reversed and remanded with directions.

Moore & Associates, Kevin J. Moore and Debby S. Doitch for Plaintiff and Appellant.

Lamb & Kawakami, Michael K. Slattery, Shane W. Tseng; Mary C. Wickham, County Counsel and Richard Girgado, Senior Deputy County Counsel for Defendant and Respondent.

————————————

Appellant Next Century Associates, LLC (Next Century)[1] seeks a property tax refund for the 2009-2010 tax year. It purchased the Century Plaza Hotel, and the real property on which it is located, in mid-2008, for $366.5 million. As of January 1, 2009, the property's corrected enrolled assessed value, which we will refer to as the enrolled value, was $367,612,305. But, Next Century contends it was entitled to a reduction in the assessed value because the "global economic meltdown" of late 2008 caused the property's market value to drop significantly between the date of purchase and January 1, 2009.

Next Century applied for a reduction in the property's assessed value. The County of Los Angeles Assessment Appeals Board No. 4 (the Board) held a hearing on the application, at which both Next Century and representatives of the Los Angeles County Assessor presented evidence on the value of the property using similar discounted cash flow (DCF) analyses.

Both Next Century's and the Assessor's DCF analyses reflected a decline in value below the enrolled value. The Assessor did not attempt to defend the enrolled value of $367,612,305, and neither party offered evidence supporting that valuation.

Instead, the Assessor's DCF analysis produced a valuation of $349,800,000, about $17.8 million below the enrolled value. The Board rejected the Assessor's DCF analysis, however,

---

[1] For reasons unknown to us, Next Century was sometimes referred to as New Century in the proceedings below.

2

because it contained an admitted error:  it overstated the hotel's 2006 NOI.[2]

Next Century's DCF analysis produced a valuation of $277,800,000, almost $90 million below the enrolled value.  Also, Next Century asserts that if the Assessor's analysis were corrected for the admitted mistake, it would generally support Next Century's proposed value.  While the Assessor does not agree, he concedes that correcting the error would not increase his valuation.

In any event, the Board also rejected Next Century's proposed valuation, stating without further explanation that the company's "income growth rates do not justify a 22% decline in value from the 2nd quarter of year 2008 to the lien date[3] of January 1, 2009, and do not justify a 29% decline in the subject property's NOI from year 2008 to 2013."

After concluding Next Century had not met its burden of proof, the Board denied the application and left in place the enrolled value, even though no party thought it correctly reflected the property's value as of the lien date.

Next Century then brought suit for a property tax refund in the Superior Court. After reviewing the administrative record,

---

[2]     Net operating income.

[3]     " 'Lien date' is the time when taxes for any fiscal year become a lien on property."  (Rev. & Tax. Code, § 117.)  All further statutory references are to the Revenue and Taxation Code unless otherwise noted.

3

and remanding for clarification, the Superior Court entered judgment in favor of Respondent County of Los Angeles.

On appeal, Next Century contends the Board was required either to accept Next Century's proposed assessed value, calculate its own assessed value, or direct the Assessor to recalculate the assessed value.

We conclude that the Board's rejection of Next Century's valuation, without sufficient explanation, and with knowledge that the Assessor's valuation analysis—if corrected— would result in a valuation significantly lower than the enrolled value, was arbitrary, as was its decision to leave in place an enrolled value that had been repudiated by the Assessor and was unsupported by any evidence. We also conclude that the Board's cryptic findings are insufficient to bridge the analytic gap between the evidence and the Board's conclusions. (See *Topanga Assn. for a Scenic Community v. County of Los Angeles* (1974) 11 Cal.3d 506, 515, 516 (*Topanga*).) And we conclude the record as a whole does not include substantial evidence in support of the Board's order leaving the enrolled value in place.

We therefore reverse with directions to remand the matter to the Board for a new hearing and more detailed findings.

4

# BACKGROUND

The material facts are undisputed.

## A. Purchase and Initial Assessment

Next Century purchased the hotel property for $366,500,000.[4] The transfer of ownership recorded on June 2, 2008. Article XIIIA of the California Constitution—adopted by the voters as Proposition 13 in 1978—limits the ad valorem tax on real property to one percent of the property's "full cash value." (Cal. Const., art. XIIIA, § 1, subd. (a).) Thus, county assessors must "assess all property subject to general property taxation at its full value." (Rev. & Tax Code § 401.) Generally, "full cash value" is "the appraised value of real property when purchased, newly constructed, or a change of ownership has occurred . . . ." (Cal. Const. art. XIIIA, § 2, subd. (a).)

The hotel purchase triggered a reassessment of the property. A purchase price in a transaction between unrelated parties generally is rebuttably presumed to be the full cash value, at least to the extent it is allocated to land and improvements subject to property taxation. (§ 110, subd. (b); Cal. Code Regs., tit. 18, § 2, subd. (b).) Here, the reassessment resulted in an initial enrolled base year value, as later corrected in October 2010, of $350,000,000.[5]

---

[4]    The $366.5 million purchase price included the land, improvements, fixtures, and personal property.

[5]    The Assessor originally determined that the base year value was $331,500,000 for the land and $35,000,000 for improvements. The original valuation did not include any allocation for furniture, fixtures, and improvements because the

5

The issue in this case is the assessed value for the 2009–2010 tax year (July 1, 2009 to June 30, 2010), measured as of the January 1, 2009 lien date. The initial enrolled value of the property for 2009–2010 was $384,442,305. After amending the enrolled base year valuation of the property in October 2010, the Assessor revised the 2009–2010 assessed value to $367,612,305.[6] This represented the maximum 2 percent annual increase in assessed value for land and improvements permitted under Proposition 13. (§51(a)(1)(D); see Cal. Const., art. XIIIA, §§ 1, 2.) No one contends that the $367,612,305 enrolled value was incorrectly computed. Rather, Next Century contends that the property should be reassessed because it declined in value shortly after the purchase.

### B. Initial Proceedings Before the Assessment Appeals Board

Section 1603 permits a taxpayer to seek a reduction in assessed value from the Board based on an asserted decline in value. In its verified Application for Changed Assessment filed December 1, 2009, Next Century did just that, contending that

---

Assessor was under the impression that New Century intended to demolish the Hotel. The Assessor's October 2010 revision allocated $250,000,000 to land, and $100,000,000 to improvements, for a total assessed value of $350,000,000. This corrected initial valuation is not in dispute in this litigation.

[6] The valuation components were $255,000,000 for land, $102,000,000 for improvements, $2,501,540 for fixtures, and $8,110,855 for personal property.

the value as of January 1, 2009 was only $200,000,000.[7]  As the Superior Court later pointed out, "[t]his represented a decline of 44% in the total value of the property, a decline of 33.3% in the value of the land, and a decline in the value of the improvements of 71.6%, from the purchase price in a period of less than seven months."

By the time of the hearing before the Board on July 25, 2013, Next Century had abandoned its contention that the property was worth only $200,000,000 on the lien date.  Instead, it sought to reduce the enrolled value of $367,612,305 to $277,800,000 as of the January 1, 2009 lien date.  The Assessor, on the other hand, argued the property was worth $349,800,000 on the lien date.

At such a hearing, "[a]n assessor is generally entitled to the presumption affecting the burden of proof provided in Evidence Code section 664 that he or she has properly performed his or her duty to assess all properties fairly and on an equal basis. [Citations.]  'Thus, the taxpayer has the burden of proving the property was improperly assessed.  [Citations.]'" (*Farr*, *supra*, 187 Cal.App.4th at pp. 682−683.)  This is reflected in California Code of Regulations, title 18, section 321, subdivisions (a)–(b), which provide:

---

[7]  The $200,000,000 proposed valuation was comprised of $170,000,000 for land, $29,000,000 for improvements, and $1,000,000 for furniture, fixtures, and equipment.  Section 51(a)(2), which codifies Proposition 8, passed by the voters in 1978, allows for reductions of assessed value due to "factors causing a decline in value."

"(a) Subject to exceptions set by state law, it is presumed that the assessor has properly performed his or her duties. The effect of this presumption is to impose on the applicant the burden of proving that the value on the assessment roll is not correct or, where applicable, the property in question has not been otherwise correctly assessed. The law requires that the applicant present independent evidence relevant to the full value of the property or other issue presented by the application.

"(b) If the applicant has presented evidence, and the assessor has also presented evidence, then the Board must weigh all the evidence to determine whether it has been established by a preponderance of the evidence that the assessor's determination is incorrect. The presumption that the assessor has properly performed his or her duties is not evidence and shall not be considered by the Board in its deliberation."

After the hearing, the Board issued written findings of fact. These findings reflect (and the parties do not dispute) that Next Century and the Assessor agreed on the physical description of the property to be assessed, the financial statements for the years 1999–2011, that the property should be valued using the DCF approach, and agreed on certain valuation factors, such as the appropriate capitalization rate, for use in their respective DCF analyses.

The Board characterized the central dispute as the predicted net operating income for the hotel for the five-year period following January 1, 2009. Next Century assumed "a no-growth rate for the subject property's first two years and an inflationary rate for the following years," while "[t]he Assessor

8

utilized reasonable RevPAR[8] growth estimates" with most years not being much higher than the inflationary rate. The Board's findings described various similarities and differences with respect to the parties' DCF analyses.

Next Century noted, and the Assessor conceded, that the Assessor made an error in the assumed 2006 NOI (expressed as a percentage of gross revenue) used in the Assessor's DCF analysis. As noted above, Next Century contended that if that error were corrected, the Assessor's DCF analysis would support Next Century's proposed value. The Assessor conceded that correcting the error would not increase his valuation. The Board, however, rejected the Assessor's proposed valuation because of the admitted error.

Ultimately, the Board concluded Next Century's projected income figures did not justify the reassessment value it sought. The Board's key finding appears on the last page of its decision:

"E. The Applicant has the burden of proof pursuant to State Board of Equalization Rule 321 [Cal. Code Regs., title 18, § 321], and all of [its] evidence and contentions were considered by the Board. The Applicant's income growth rates do not justify a 22% decline in value from the 2nd quarter of year 2008 to the lien date of January 1, 2009, and do not justify a 29% decline in the subject property's NOI from year 2008 to year 2013."

For its "Value Conclusion," the Board stated:

"The Board finds the Applicant did not meet [its] burden of proof in refuting the legally presumed correctness of the

---

[8] Revenue per available room, or RevPAR, requires a prediction of occupancy and room rates.

9

Assessor's enrolled value. Therefore, the Board finds that the Application is denied and directs that the $367,612,305 enrolled assessment value of the Assessor be sustained."

C. Initial Proceedings at the Superior Court

As noted above, Next Century then brought suit in the Superior Court to obtain a refund of the property taxes it paid.[9] After considering the evidence submitted by the parties and hearing argument, the trial judge issued his "Order Regarding Appeal of Property Tax Valuation."

In that order, the trial court observed that it "had two significant problems in connection with analyzing the issues before it. The first is that in their briefs the parties have given the court very little in terms of explanation of the supposed significance of the numbers they presented to the [Board] or how precisely those numbers lead to their respective conclusion. . . . The second problem is that [Next Century] focuses almost entirely on the evidence it contends supports its position. This does not comply with the requirement that when asserting there is a lack of substantial evidence on a point, all the material evidence must be set forth."

More significantly, the trial court concluded that the Board's key finding, quoted above, communicates three things: "*First*, it constitutes an adverse credibility finding on the evidence, particularly the analysis, presented by [Next Century]. *Second*, it expressly rejects [Next Century's] analysis that the

---

[9]     A refund suit generally may be brought only after first seeking relief from the Board. (*Sunrise Retirement Villa v. Dear* (1997) 58 Cal.App.4th 948, 958.)

10

pertinent income history of the Hotel substantiates a 22% decline in value from June 2008 to the January 1, 2009 lien date. *Third*, it also expressly rejects the five-year projection of NOI (2009–2013) which underlay [Next Century's] DCF analysis."

Next Century had complained about the adequacy of the Board's findings, but the Court concluded that the key finding: "sufficiently sets forth the basis for the rejection of [Next] Century's analysis; it does not need to be a specific exposition of all the evidence and analysis." Moreover, the trial court ruled that the Board "was permitted to reject as not credible the claim that the value of the Hotel's land and improvements had decreased over 20% in seven months. [Next Century's] analysis and projections were analogous to an expert's opinion in a trial court, which the trier of fact was free to accept or to reject. *See* CACI 219."

The trial court remanded the matter to the Board for clarification of one issue, however. As noted above, California Code of Regulations, title 18, section 321, subdivision (b) provides in part: "The presumption that the [A]ssessor has properly performed his or her duties is not evidence and shall not be considered by the Board in its deliberations." The court was concerned that the Board may have run afoul of this provision by relying on the presumption as a basis for upholding the enrolled value. It therefore remanded the matter to the Board "to reconsider that portion of its decision establishing the enrolled assessment value as of January 1, 2009, of $367,612,305. To the extent the [Board] rejects the assessor's value articulated at the hearing (as well as [Next Century's]), it should state why it has done so. If the [Board] determines that its prior analysis and conclusion were correct, it is requested to amplify on the legal

basis for that determination. If the [Board] determines that some different enrolled assessment value should apply, it should articulate the reasons supporting the figure it chooses."

D. Proceedings on Remand Before the Board

On remand, after a hearing, the Board issued its Addendum to Findings of Fact. In the Addendum, the Board reiterated its conclusions that Next Century had not met its burden of proof, and that the Assessor had not presented a reliable valuation because of the admitted error. The Board stated it therefore left the existing enrolled value in place. The Board also stated it did not rely on the presumption that the Assessor had properly performed his duties. Rather, it stated it left the existing roll value in place because it believed Next Century had failed to carry its burden of proof. Moreover, it asserted it is not its responsibility to correct mistakes made by either party or to develop conclusions that are not based upon evidence or testimony presented during a hearing. It again denied the Application. (The Board did not provide any further explanation of *why* it rejected Next Century's valuation analysis or why it affirmed the enrolled value even though the Assessor believed it was too high.)

E. Proceedings at the Superior Court Postremand

After the Superior Court received the Addendum to Findings of Fact, it issued a written decision indicating it found the addendum responsive to its remand order. The court's order states, "The Addendum to Findings of Fact reduces to this: the Assessor's enrolled value for 2009–2010 was not accepted by the [Board] because of a presumption of correctness, but rather because neither [Next Century] nor the Assessor proved by a

12

preponderance of the credible evidence that their alternative calculation was correct.  This is known in civil litigation is a failure of proof by the party with the burden of proof.  [¶]  [T]he court is persuaded that substantial evidence supports the [Board's] determination that the roll value for 2009–2010 should be $367,612,305."

## DISCUSSION

A. Standard of Review

" ' " Where a taxpayer challenges the validity of the valuation method used by an assessor, the trial court must determine as a matter of law 'whether the challenged method of valuation is arbitrary, in excess of discretion, or in violation of the standards prescribed by law.'  [Citation.]  Our review of such a question is de novo.  [Citation.]" ' " (*Time Warner Cable Inc. v. County of Los Angeles* (2018) 25 Cal.App.5th 457, 463 (*Time Warner*).)  Here, as noted above, both Next Century and the Assessor used similar DCF analyses, and no one challenges that method of valuation.  It is expressly permitted by regulation.  (Cal. Code Regs., title 18, §§ 2, subd. (b), 3, subd. (e), 8.)

But where, as here, " ' " the taxpayer challenges the *application* of a valid valuation method, the trial court must review the record presented to the Board to determine whether the Board's findings are supported by substantial evidence but may not independently weigh the evidence.  [Citations.]  This court . . . reviews a challenge to application of a valuation method under the substantial evidence rule. " ' " (*Time Warner, supra*, 25 Cal.App.5th at p. 463.)  Other factual determinations by the Board also are reviewed under the substantial evidence standard.

13

(*Farr v. County of Nevada* (2010) 187 Cal.App.4th 669, 679−680 (*Farr*).)

Of course, to the extent our analysis involves interpretation of statutes or administrative regulations, or other questions of law, our review is de novo. (*Robles v. Employment Development Dept.* (2015) 236 Cal.App.4th 530, 546; *Farr*, *supra*, 187 Cal.App.4th at pp. 679−680.) Finally, "[a] board's 'arbitrariness, abuse of discretion, or failure to follow the standards prescribed by the Legislature' are legal matters subject to judicial correction. [Citations]." (*Farr*, *supra*, 187 Cal.App.4th at p. 679.)

B. The Board's Decision to Maintain the Existing Roll Value Was Arbitrary and Unsupported by Substantial Evidence.

Next Century purchased its hotel on the eve of an economic meltdown the likes of which had not been seen in decades. By January 1, 2009, the housing and stock markets had imploded and the economy had entered a recession. Business activity, including business travel had declined precipitously. When, and in what fashion a recovery would come was anyone's guess.

Against that backdrop, Next Century had the burden of proving the reduced value of its hotel as of the January 1, 2009 lien date.[10] No party sought to support the existing enrolled value. Next Century provided survey data indicating hotel values across the country declined "at a dizzying pace" following the dramatic stock market declines of September 2008. The Assessor conceded the enrolled value was too high, and sought to

---

[10] Section 1601.8 states, "[t]he applicant for a reduction in an assessment on the local roll shall establish the full value of the property by independent evidence."

14

prove a value between the roll value and the value asserted by Next Century. The parties agreed the hotel's value had declined, but disagreed about by how much. The real question was how long, and how severe, the recession would be.

Although the Assessor's analysis contained an error, if the error were corrected, it would not increase the Assessor's valuation conclusion (per the Assessor) and might (per Next Century) result in a value consistent with that advocated by Next Century. In other words, if anything, the error made the Assessor's proposed valuation too high.

Under these circumstances, it was incumbent on the Board to explain in far more detail the deficiencies it perceived in Next Century's analysis so that the parties and the court could understand *why* the Board rejected Next Century's analysis, and its rationale for affirming the discredited enrolled value. Clearly, the Board has the power to disregard a valuation analysis it determines for good reason is unpersuasive, and to reject expert testimony that is speculative, unsupported, or otherwise unpersuasive. But it must tell the parties, and reviewing courts, *why* it rejects the evidence in other than conclusory terms. The orderly process of judicial review requires that administrative agencies must "set forth findings to bridge the analytic gap between the raw evidence and ultimate decision or order." (*Topanga, supra,* 11 Cal.3d at pp. 515, 516; see also, *Young v. City of Coronado* (2017) 10 Cal.App.5th 408, 420−422.) This requirement applies with equal force to local Assessment Appeals Boards. (*Farr, supra,* 187 Cal.App.4th at p. 686.)

"Among other functions, [the] findings requirement serves to conduce the administrative body to draw legally relevant subconclusions supportive of its ultimate decision; the intended

15

effect is to facilitate orderly analysis and minimize the likelihood that the agency will randomly leap from evidence to conclusions. [Citations.] In addition, findings enable the reviewing court to trace and examine the agency's mode of analysis. [Citations.] Absent such roadsigns, a reviewing court would be forced into unguided and resource-consuming explorations; it would have to grope through the record to determine whether some combination of credible evidentiary items which supported some line of factual and legal conclusions supported the ultimate order or decision of the agency." (*Topanga, supra*, 11 Cal.3d at p. 515.)

Here, the Board stated that Next Century's "income growth rates" do not justify the decline in value it sought, nor do they "justify a 29% decline in the subject property's NOI from year 2008 to year 2013." But the Board did not indicate (1) how it reached these conclusions or (2) what value it believes the income growth rates do support and why.

In any event, no party put forth evidence that the existing roll value remained valid. On the contrary, the parties agreed it was too high. Thus, there was no substantial evidence supporting the continued validity of that valuation and any presumption in favor of the existing roll value was rebutted.

The Board was *not* limited to choosing between the valuation advocated by Next Century, the Assessor, and the existing roll value. Instead, the Board "shall make its own determination of value based upon the evidence properly admitted at the hearing." (Cal. Code Regs., tit. 18, §324, subd. (b).) If desired, the Board could have continued the hearing to allow the Assessor to correct the defect in his valuation analysis, so the Board would have the benefit of the Assessor's opinion. (Cal. Code Regs., tit. 18, §323, subd. (c).) But it was not entitled

16

to uphold an enrolled value that the Assessor agreed was too high, and was unsupported by any evidence.

## DISPOSITION

The judgment of the trial court is reversed and the trial court is directed to enter a new judgment vacating the findings of fact and decisions of the Board and remanding the matter to the Board for a new hearing.  Next Century is awarded its costs on appeal.


CURREY, J.*

We concur:


ROTHSCHILD, P. J.


BENDIX, J.

---

*      Judge of the Los Angeles Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

17

Filed 11/30/18

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| NEXT CENTURY ASSOCIATES, LLC, | B284092 |
| Plaintiff and Appellant, | (Super. Ct. L.A. County Nos. BC569076, BC594802) |
| v. | |
| COUNTY OF LOS ANGELES, | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendant and Respondent. | |

THE COURT*:

Good cause appearing, it is ordered that the opinion in the above entitled matter, filed November 1, 2018, be published in the official reports.

_____

_____   _____
_____
   *ROTHSCHILD, P. J.        BENDIX, J.
CURREY, J.**

** Judge of the Los Angeles Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

18